OPINION OF THE COURT
Jules E. Orenstein, J.
By order of the United States Court of Appeals for the Second Circuit (Newman, Ch. J.) the defendant’s application for a writ of habeas corpus in Matter of Howard v Senkowski (986 F2d 24) was granted and remanded to the District Court for the Eastern District of New York for further proceedings. Pursuant to the mandate of the Court of Appeals, on April 22, 1993, the District Court conditionally granted Howard’s petition subject to certain conditions including further findings of fact by this court within 60 days thereof* on the existing or an expanded record of the defendant’s prior Batson hearing (see, Batson v Kentucky, 476 US 79 [1986]) heard and decided here on November 13, 1987 (Orenstein, J.).
The remand to the Federal District Court and that court’s return of the matter here is prefaced by the following procedural history:
(1) On May 3, 1984, the defendant was convicted after a jury trial before this court (Lawrence, J., retired 1985) of robbery in the first degree, criminal possession of stolen property in the first degree, and unauthorized use of a motor vehicle in the third degree.
(2) Subsequently, and on June 5, 1984, the defendant was sentenced (Lawrence, J.), as a prior felony offender, to concurrent terms of incarceration of 12 Vi to 25 years (robbery, first degree), 3 Vi to 7 years (criminal possession of stolen property, first degree), and 1 year (unauthorized use of a motor vehicle, third degree).
(3) The defendant appealed same to the Supreme Court, Appellate Division, Second Department, during the pendency of which Batson v Kentucky (supra) was decided (People v Howard, 128 AD2d 804). That tribunal found that the defendant had made a prima facie showing of racial discrimination in the prosecutor’s exercise of peremptory challenges of two minority jurors; held the appeal in abeyance; and remitted the matter here for an evidentiary hearing pursuant to Batson v *741 Kentucky (supra), made retroactive to this case and others then pending appeal (Griffith v Kentucky, 479 US 314 [1987]).
(4) After a full and complete Batson hearing, and counsels’ subsequent submission of memoranda of law, the court rendered its decision dated November 6, 1987 and granted November 13, 1987, finding the prosecutor to have articulated race neutral explanations for his peremptory challenges of the two minority prospective jurors.
(5) Essentially, this court held that although race was mentioned as a consideration/factor in the prosecutor’s peremptory strikes of the two minority prospective jurors, it was not the "sole” or major factor in motivating those challenges and did not, therefore, constitute purposeful discrimination within the meaning of Batson (supra); and, further found a failure on the part of the defense to establish such discrimination.
(6) The Appellate Division, Second Department, thereafter affirmed Howard’s convictions (People v Howard, 143 AD2d 943); and the New York Court of Appeals denied defendant’s application for leave to appeal to that Court (People v Howard, 73 NY2d 892).
(7) The defendant’s subsequent petition for a writ of habeas corpus lodged with the United States District Court for the Eastern District of New York was denied. However, upon appeal therefrom, the United States Court of Appeals (2d Cir) on February 17, 1993, vacated that judgment and remanded same for further proceedings upon the Batson issue previously ruled upon by this court.
In that connection, the Second Circuit held that since the prosecutor indicated race was a factor in exercising the peremptory challenges to certain of the prospective jurors in the case, this court’s prior application of the pretext analysis rules outlined in Texas Dept. of Community Affairs v Burdine (450 US 248 [an employment discrimination case]), and footnoted by the Supreme Court in deciding Batson v Kentucky (supra), was inappropriate. The Second Circuit indicated that the dual motivation analysis rules of Arlington Hgts. v Metropolitan Hous. Corp. (429 US 252 [a rezoning case]), and their application as outlined in Hunter v Underwood (471 US 222 [a voter disenfranchisement case]), should have been used. The matter was then referred back to the Federal District Court for such an analysis on the current/existing record or such expanded record as that court deemed appropriate; or for return by the *742 District Court to this court for similar action. The matter was referred here.
This court considers the testimony developed in the prior Batson hearing adequate for review in light of the decision of the United States Court of Appeals and finds no basis to justify expansion of the record with further testimony. It will, therefore, recount the material and relevant portions of same at this time and apply the analysis as directed.
THE HEARING
The peremptory challenge/Boison hearing was held by this court on May 27 and May 28, 1987, at which time former Assistant District Attorney Arthur Diamond testified.
After first explaining, in general terms, the nature of the case against the defendant and codefendant (i.e., circumstantial evidence; psychiatric problems of key witness; age of the defendants) the trial prosecutor, Mr. Diamond, indicated that he was looking for an intelligent and strong jury — the characteristics with which he was most concerned. At the time he was about to commence jury selection, Diamond indicated and swore he was not seeking to acquire jurors of all one particular race.
Indeed, by allusion to the original trial record, the hearing transcript reveals that prosecutor Diamond advised Trial Judge Lawrence, in part, with regard to the two minority prospective jurors — "Judge, I have reasons for exercising a peremptory for each of them * * * I can state * * * that neither peremptory challenge was exercised solely on the basis of race” (emphasis ours). Significantly, Diamond uttered these words at the original trial long before the Batson case was decided.
Diamond testified as to his reasons for challenging the two prospective jurors. With respect to prospective juror Dubose, Diamond testified as follows: "During the course of jury selection, Judge Lawrence, as was his practice, had a chart on the wall of the courtroom and there were six — five or six — questions written on the chart and each juror, as their turn came, stood up and was asked by his Honor to read the question on —from—the chart and answer it as best they could. Mrs. Dubose was, to my recollection, was very soft spoken and when she got to the final question, either five or six, the question was 'do you have any bias or prejudice?’ and Mrs. Dubose was unable to read the word 'prejudice’. She mispro *743 nounced it, I believe twice, and at that point Judge Lawrence said the word to her, to my recollection, and she gave her response, which I do not recall, but I remember that incident because she was the only juror who was unable to read the word and at that point I made a decision to exercise a peremptory challenge because I was concerned about her education level and her possible ability to follow the proof as I knew it was going to be during the course of the People’s case”.
As to prospective juror Herring, Diamond testified that he had no independent recollection of the selection process as it related to her and relied upon notes that he prepared contemporaneously with the voir dire to indicate the basis upon which he exercised his peremptory challenge. In that regard, he testified, in pertinent part, that: "Well, based upon my notes, she was unacceptable because there were a number of reasons. One was that she had been employed for two and a half years and had not been married — excuse me — had not been employed prior to that, according to my notes, which didn’t square with what I was looking for, number one. Number two, she had five children and I believe that my feeling was she would be sympathetic as a juror, not strong. Thirdly, she had nothing else to recommend her as a juror for this particular case in that she had absolutely no connection with law enforcement in any way which also did not comport with what I was looking for as far as a juror in general and, so, based upon my notes, I believe that I didn’t find anything in her background which I thought would make her a suitable juror for this particular case”.
The hearing record further reflected other factors concerning Mrs. Herring regarding no prior jury service, never a victim of a crime, no contact with the criminal justice system or with law enforcement personnel, and no opinion on the insanity issue.
Thus, according to Diamond, these challenges were made in light of his perception of the kind of case he was prosecuting, the type of evidence he intended to present, and the psychiatric background of one of his main witnesses which, in his opinion, further complicated the facts of the case. In that regard, Diamond testified, as above indicated, that he wanted "an intelligent, strong, mostly male jury”, and that strong and intelligent were the characteristics he was most concerned with in selecting that jury. The ultimate selected jury consisted of six males and six females.
*744 On cross-examination, Diamond was asked whether he believed that black jurors would be bad for his case. In response, Diamond stated that he did not feel that the black jurors he challenged would be bad for his case because they were black. He did admit, however, that race was a factor, because he felt that these two jurors might be sympathetic to the defendant.
However, Diamond did specify that race was not an overriding factor, nor major factor, but merely one of "a constellation of factors that were presented to him as a trial attorney” (emphasis added), and on that basis the challenges were made upon a totality of the circumstances. The defense also questioned Diamond with regard to other prospective jurors and how he handled the selection process as to them in light of the juror profile/characterization he was seeking.
Essentially, the court’s prior decision and ruling upon the prosecutor’s testimony, as recounted above, found Diamond to be a credible witness concerning the prior voir dire proceedings along with his admission that race was a minor factor in his peremptory challenges of the two subject prospective jurors. Most important and determinative in this court’s ruling was that race "was not the sole factor upon which he based that determination”. In any case, Diamond’s determination to peremptorily challenge these jurors did not violate proscriptions of Batson (476 US 79, supra); and the testimony showed that this prosecutor did not challenge potential jurors "solely” on account of their race.
Moreover, this court found a failure on the part of the defense to establish purposeful discrimination as motivation for the subject peremptory challenges. Certainly, review of the testimony generated five years earlier in this case clearly shows that Diamond’s indication that race, as a factor/consideration, was de minimis at best, especially in light of the other articulated well-founded and reasonable concerns he had, as a trial attorney, in deciding whether or not to challenge those prospective jurors.
CONCLUSIONS OF LAW
The United States Court of Appeals for the Second Circuit remanded this case due to the prosecutor’s representation that race was a factor amongst others resulting in his peremptory challenge of two minority jurors. The court requested application of dual motivation principles and determination, on the existing or an expanded record, as to whether or not the *745 prosecutor would have taken the same action in the absence of any improper/racial motivation (Arlington Hgts. v Metropolitan Hons. Corp., 429 US 252, supra; Mt. Healthy City Bd. of Educ. v Doyle, 429 US 274 [1977]).
However, application to this matter of the rules of dual motivation analysis, as specified in the cases above cited, fails to change this court’s result concerning and upon the Batson hearing previously conducted in this case.
Arlington Hgts. (supra) involved the claim that the denial of an application to rezone an area was racially motivated. The case indicates that proof of racially discriminatory intent or purposes is required to show a violation of the Equal Protection Clause; and ''[determining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available” (supra, at 266).
Here, although Diamond mentioned race as a factor, it was certainly minor when compared to the other articulated/mentioned considerations that he had in reaching his decision regarding the two minority prospective jurors. In that connection, the following nonracial criteria, in addition to other items already mentioned, was specified by Diamond in reaching each one of his decisions to exercise those challenges:
Mrs. Dubose — inability to properly read and pronounce the word "prejudice” from the court’s chart listing several questions for jurors to consider;
Resultant concern about the education level and ability to follow the proof as evidenced by difficulty above indicated;
Mrs. Herring — five children in family and for that reason likely to be sympathetic as a juror in the case;
No connection with law enforcement in any way and lack of a general background to render her suitable as a juror in this particular case.
In addition to these concerns, which in themselves are proper grounds for peremptory challenges, CPL 270.25, it is clear that the prosecutor’s exercise of challenges to strike Herring and Dubose would have resulted even without the impermissible representation that race was considered in a very minor context.
Thus, the record shows the existence of nonracial grounds to support the peremptory challenges made in this case; and this court finds that these challenges would have been made even without the impermissible factor of race which, although *746 mentioned, does not appear to be, then or now, a motivational criterion.
As a matter of credibility, we take note of the trial prosecutor’s statements to the original trial court, made prior to the Batson decision. Also to be noted, the parties to Batson did not prepare a brief or argue the ultimate issue (equal protection) upon which the high Court decided the case (Batson v Kentucky, supra, at 115, 117-118 [Burger, Ch. J., dissenting]).
Clearly, Diamond’s hearing testimony in this light cannot be considered pretextual or tailored to fit the Batson formula whichever it may be. Moreover, though opportunity presented itself at the original trial and later at the instant postconviction hearing, the defense has not been able to prove otherwise (Hunter v Underwood, 471 US 222, supra).
This court has had occasion to consider the latest pronouncement by the United States Supreme Court in a racial discrimination employment matter that applied the pretext analysis of Burdine (450 US 248, supra; St. Mary’s Honor Ctr. v Hicks, 509 US —, 61 USLW 4782 [1993]). While this court views such decision in the context of a civil burden of proof case and not here controlling, it is interesting to note the court’s holding. It was held that even though the employer petitioner was found to be less than truthful concerning alleged evidence of nondiscriminatory reasons advanced to rebut the presumption/prima facie showing by the plaintiff of racial discrimination, the Supreme Court found that same did not remove and/or eliminate the need of the plaintiff employee, Hicks, to introduce evidence to support racial discrimination, and, thus, ruled against him.
Although this court does not regard as false or pretextual the testimonial representations of nondiscriminatory bases preferred by former Assistant District Attorney Diamond in support of his peremptory challenges of the prospective two jurors in this case, the defense here is not relieved from establishing racial discrimination as being the motivational factor behind the peremptory challenges exercised and did not do so here, either at the original trial or later "Batson” hearing (see, Batson v Kentucky, supra; Texas Dept, of Community Affairs v Burdine, supra; United States Postal Serv. Bd. of Governors v Aikens, 460 US 711; cf, St. Mary’s Honor Ctr. v Hicks, supra).
Accordingly, this court finds the prosecutor to have articulated race neutral explanations for the challenge of two *747 minority prospective jurors in this case pursuant to Batson v Kentucky (supra), despite a minor allusion to race as a factor. In the absence of any discriminatory purpose as a motivating factor in the prosecutor’s exercise of these challenges and the failure of the defense to so prove (Arlington Hgts. v Metropolitan Hous. Corp., supra; Hunter v Underwood, supra), this court must once again adhere to and reiterate its original determination. It is clear to this court that the two exercised peremptory challenges would have been and were properly interposed for racially neutral reasons, notwithstanding a de minimis allusion to a race.

 As the District Court decision was not filed with this court until June 2, 1993, on June 7, 1993, when placed on this court’s calendar for the first time, the parties stipulated to extend the District Court’s 60-day time limitation to August 2, 1993.