Benito GUZMAN, Appellant,

v.

The STATE of Texas.

No. 1101–00.

Court of Criminal Appeals of Texas, En Banc.

May 22, 2002.

C. Wayne Huff, Dallas, for Appellant.

D. Prichard Bevis, Jr., Asst. DA, Dallas, Matthew Paul, State's Atty., Austin, for State.

---

**OPINION**

COCHRAN, J., delivered the opinion of the Court, joined by KELLER, P.J., KEASLER, HERVEY and HOLCOMB, JJ.

■ We granted the State's Petition for Discretionary Review to re-examine the so-called "dual motivation" defense to a *Batson*[1] peremptory strike challenge.[2] We reaffirm our prior plurality opinion in *Hill v. State*[3] and hold that when the motives behind a challenged peremptory strike are "mixed," *i.e.*, both impermissible (race or gender-based) and permissible (race and gender-neutral), if the striking party shows that he would have struck the juror based solely on the neutral reasons, then the strike does not · violate the juror's Fourteenth Amendment right to equal protection of the law.

**I.**

The State charged appellant with capital murder for intentionally or knowingly causing the death of a child under the age of six years. The State did not seek the death penalty, and thus the parties conducted a general voir dire of the entire jury panel rather than the individual questioning of jurors required in a death penalty trial. At the close of voir dire, appellant challenged the State's use of peremptory strikes against six venirepersons, all of whom were either Hispanic or African American. The State then gave reasons for all of its strikes. Only the strike of juror number 17—Mr. Leacher—

---

1. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

2. We granted review on the State's sole question:

 Where the State has a number of motivations for striking a prospective juror, one of which is gender based while others are proper, can the appellant prevail on a *Bat-son* challenge by simply showing that one of the motivations is improper even if the State shows that the prospective juror would have been struck absent the improper motivation?

3. 827 S.W.2d 860 (Tex.Crim.App.1992) (plurality op.).

is at issue in this appeal. The relevant exchange follows:

> State: Number 17, together with Mr.—number 15, Mr. Gallegos, they are the only two single males on the panel. It's the State's contention-single males with no children.
>
> It's the State's contention that this being a case that involves family violence, violence against a child, we prefer to have probably not only women but also individuals who have children who are going to be able to comprehend the issues that are going to be at hand.
>
> My co-counsel as well as myself and [another prosecutor] also noted that several times during the voir dire during the Court's voir dire that number 17, Mr. Leacher, fell asleep or shut his eyes for long extended periods of time.
>
> ❖ ❖ ❖
>
> Court: [Defense counsel], anything further?
>
> Defense: We would add in addition to our objection on juror number 17 that the State noted that he was struck because he was a male. We would argue that is also a constitutionally impermissible basis for a strike.
>
> Court: The Court also notes that the State struck five females. Anything further from either side?
>
> State: Nothing further from the State.
>
> Defense: No.
>
> Court: The Court finds that the State has not exercised their peremptory challenges in a racially discriminatory way.
>
> Your request is denied.

The State noted the ultimate composition of the jury:

> State: Because we are at the conclusion, Your Honor, of the *Batson* hearing, now that we have had a chance to see the actual composition of the jury as seated, we would like the record to reflect that by my count the jury is comprised of seven females, five males, one African American, one Hispanic and one Asian American.

After hearing all of the evidence at trial, the jury returned a verdict of guilty, and the trial court sentenced appellant to life imprisonment. On direct appeal, appellant challenged the legal sufficiency of the evidence and the adverse ruling on his *Batson* objection. The court of appeals concluded that the evidence was legally sufficient, but nonetheless reversed appellant's conviction. The court of appeals held that the trial court should have sustained appellant's *Batson* challenge to juror number 17 because the prosecutor's dual motive for striking that juror was not, as a matter of law, gender-neutral.[4] We granted review to determine whether that conclusion was correct.

## II.

### A. Batson *Prohibits Gender or Race–Based Peremptory Strikes.*

 Under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, a litigant may not exercise a peremptory challenge based on the juror's gender (*J.E.B. v. Alabama ex. rel. T.B.*), ethnicity (*Hernandez v. New York*), or race (*Batson v. Kentucky*).[5] Although *Batson* involved a race-

---

4. *Guzman v. State,* 20 S.W.3d 237 (Tex.App.-Dallas 2000) (concluding that when a litigant gives several reasons for a peremptory strike, one of which is gender-based, the litigant has not tendered a gender-neutral explanation).

5. *J.E.B.,* 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994); *Hernandez,* 500 U.S. 352,

based peremptory strike, courts analyze all allegedly discriminatory strikes according to the steps laid out in *Batson*. First, the party opposing a particular peremptory strike must establish a prima facie case of racial or gender discrimination. Second, the burden of production then shifts to the proponent of the strike to offer a race or gender-neutral explanation for that strike. If the proponent offers a race or gender-neutral explanation, the trial court must then decide whether the opponent has proved purposeful racial or gender discrimination.[6]

■ In *Purkett v. Elem*, the Supreme Court explained that the issue in step two is the facial validity of the prosecutor's explanation, and "[u]nless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral."[7] Thus, it is only at step three "that the persuasiveness of the justification becomes relevant-the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination."[8]

## B. The "Dual Motivation" Scenario.

What is the result when, at step two of a *Batson* challenge, the proponent offers several different reasons for his peremptory strike, one of which is not race or gender neutral? Should the trial court automatically determine that the opponent has established purposeful discrimination?

In *Powers v. Palacios*, the Texas Supreme Court apparently answered the latter question in the affirmative.[9] That court held that a strike motivated in part by race (or gender) violates equal protection.[10] Specifically, the court held that "equal protection is denied when race is a factor in counsel's exercise of a peremptory challenge to a prospective juror."[11]

Conversely, in *Hill v. State*,[12] a plurality of this Court concluded "that race may be *a* factor coexisting with a non-racial reason for a strike, however, race may not be *the*

---

111 S.Ct. 1859, 114 L.Ed.2d 395 (1991); *Batson*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). *See also Fritz v. Texas*, 946 S.W.2d 844 (Tex.Crim.App.1997)(gender); *Wamget v. State*, 67 S.W.3d 851 (Tex.Crim.App.2001)(ethnicity); TEX.CODE CRIM. PROC. art. 35.261 (race).

6. *Purkett v. Elem*, 514 U.S. 765, 767, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995); *see also Batson*, 476 U.S. at 96–98, 106 S.Ct. 1712.

7. *Purkett*, 514 U.S. at 768, 115 S.Ct. 1769(internal quotations omitted).

8. *Id.* "At that stage, implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination. But to say that a trial judge may choose to disbelieve a silly or superstitious reason at step three is quite different from saying that a trial judge *must terminate* the inquiry at step two when the race-neutral reason is silly or superstitious. The latter violates the principle that the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Id.* (emphasis in original).

9. *Powers*, 813 S.W.2d 489 (Tex.1991).

10. *Id.* at 491.

11. That court based its holding on the following exchange, in which the proponent offered no specific neutral reason for the strike:

[The Court]: The Court will ask Mr. Hall. Were you motivated by race to strike her?
[Mr. Hall]: Well—
[The Court]: I don't know how you're going to answer that.
[Mr. Hall]: All I can stay [sic] is not improperly, but it certainly figured into it, but it was not the sole reason for striking her, no.
[The Court]: Gentlemen, it's still overruled.
*Id.* at 490, n. 1. As explained *infra*, this explanation would be deficient under the "dual motivation" analysis as well as the "taint" analysis.

12. 827 S.W.2d 860 (Tex.Crim.App.1992)(plurality opinion).

reason for the strike."[13] The *Hill* plurality adopted the "dual motivation" or "mixed motives" approach.[14] It emphasized that the fact that a litigant mentions race in his explanation for a peremptory challenge is indicative, but not conclusive, of purposeful discrimination in the case.[15] In a concurring opinion, four judges rejected the dual motivation approach and advocated a "bright line" rule: equal protection is denied whenever race is a factor in the exercise of a peremptory strike, because "one simply cannot articulate a 'race-neutral' explanation for exercising a peremptory strike when race is a part of that explanation."[16] Under that bright line rule, any non-neutral justification fatally taints any neutral justification.[17] Just as one bad

**13.** *Id.* at 869 (emphasis added).

**14.** *Id.; see also Fritz v. State*, 946 S.W.2d 844, 847–48 (Tex.Crim.App.1997) (Meyers, J., concurring) (stating that "once the objecting party makes a prima facie case of purposeful discrimination, the responding party may come forward with two or more *independent* explanations for its peremptory challenge(s). If at least one of those explanations is neutral, the trial court will have to determine whether the responding party would have exercised the peremptory challenge(s) anyway solely because of the neutral reason(s)") (emphasis in original); *Francis v. State*, 909 S.W.2d 158, 164–65 (Tex.App.-Houston [14th Dist.] 1995, no pet.) (stating that when prosecution had dual motives for peremptory strikes, one of which was non-neutral, appellate court proceeds to third *Batson* step and determines whether trial court's decision is "clearly erroneous").

**15.** *Id.*

**16.** *Hill*, 827 S.W.2d at 875. Both the plurality and concurring judges in *Hill* agreed that, under the circumstances of that case, the defendant had proved that the State's reasons for striking the juror were pretextual. The prosecutor said he struck the juror because he felt like the juror would "identify" with the defendant: "He's black, he's male, and I didn't like the way he responded to my question." The record showed that voir dire of the prospective juror was perfunctory, and that the juror was asked no meaningful questions. *Id.* at 869–70.

**17.** Some other state courts have opted for this bright line rule, holding that one non-neutral reason vitiates the entire jury selection process regardless of the genuineness of the other explanations for the strike. Consequently, their analysis stops at the second stage of the three step process. *See, e.g., Rector v. State*, 213 Ga.App. 450, 452, 454–55, 444 S.E.2d 862, 863, 865 (Ga.App.1994)(reversing armed robbery conviction for striking a black female because she "had a big gold tooth with a pattern on it right in the front of her mouth" (not race neutral) and had only finished high school (race neutral)); *Payton v. Kearse*, 329 S.C. 51, 55–56, 495 S.E.2d 205, 208 (S.C.1998)(reversing civil case for striking white juror because she was "redneck variety" (not race neutral) and from a lawless family (race neutral)); *State v. Lucas*, 199 Ariz. 366, 368–69, 18 P.3d 160, 162–63) (reversing sexual assault and kidnapping conviction for striking a black male because Southern males have prejudice against pregnant women who work (not gender-neutral) and he was an attorney (gender-neutral)).

On the other hand, a number of state courts have expressly adopted or employed the dual motivation analysis developed by the Supreme Court in its non-*Batson* equal protection jurisprudence. *See, e.g., State v. Gattis*, 1996 WL 769328, *1 – 3, 1996 Del.Super. LEXIS 574 *5–7 (Del.Super.Dec. 11, 1996)(adopting the dual motivation analysis), *aff'd, Gattis v. State*, 697 A.2d 1174, 1183 (Del.1997); *State v. Hodge*, 248 Conn. 207, 226, 726 A.2d 531, 544 (1999) (recognizing that the dual motivation analysis is appropriate in a certain set of circumstances); *Odom v. State*, 241 Ga.App. 361, 363, 526 S.E.2d 646, 649 (1999)(holding strike of struck juror no. 7—because of his status as a single father—does not violate the standards set forth in *Batson:* "Here, the trial court determined that the State's explanation for the strike was reasonable and was not solely based on the gender of the juror but on another factor as well—namely his status as a single parent. As we have previously held that the characteristics of being single with no children are gender-neutral … we cannot say that the trial court abused its discretion in allowing the peremptory strike of juror no. 7."); *People v. Hudson*, 195 Ill.2d 117, 138, 253 Ill.Dec.

apple spoils the barrel, one non-neutral reason taints all neutral reasons.

Understandably, Texas courts of appeals have frequently erred on the side of caution, declining to follow the plurality opinion in *Hill.* Instead, these courts of appeals have continued to follow pre-*Hill* courts of appeals' cases which adhere to the "taint" view[18] and the *Powers v. Palacios* decision.[19]

Nonetheless, the "taint view" is not constitutionally required by the Supreme Court. *Batson* itself held that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors *solely* on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant."[20] Similarly, in *J.E.B.*, the Court held that "the Equal Protection Clause prohibits discrimination in jury selection on the basis of gender, or on the assumption that an individual will be biased in a particular case *for no reason* other than the fact that the person happens to be a woman or happens to be a man."[21] The Supreme Court has set out the core of its test: if a peremptory strike is motivated by race or gender, that strike violates the Equal Protection Clause.

712, 745 N.E.2d 1246, 1258 (2001) (explicitly adopting the "dual motivation" analysis in the case before it, following the rationale set out in *United States v. Tokars,* 95 F.3d 1520 (11th Cir.1996)); *State v. Weaver,* 912 S.W.2d 499, 509 (Mo.1995)(applying a dual motivation analysis without calling it such; "[t]he distinction between this case and all of those relied on by the defendant is that in this case, the prosecutor's decision to strike B was not based solely on race or upon any assumptions about persons of B's race but was based upon the way she behaved and answered questions, that is, hesitation, lack of eye contact, flippancy and other intangibles observed only by those present in the courtroom"); *see also McCray v. State,* 738 So.2d 911, 916–17 (Ala. Crim.App.1998)(Brown, J., concurring)(urging court to adopt the "dual motivation analysis" in all future cases in which both racial and race-neutral reasons have been given for a party's use of a peremptory strike).

**18.** As Judge Johnson noted in her *Wamget* dissent, several intermediate court decisions, prior to *Hill,* had adhered to the taint approach, *i.e.,* that if race is *any* factor in a peremptory strike, then a *Batson* violation has been proved. *Wamget v. State,* 67 S.W.3d 851, 868–69 (Tex.Crim.App.2001) (Johnson, J., dissenting) (citing *Moore v. State,* 811 S.W.2d 197, 200 (Tex.App.-Houston [1st Dist.] 1991, pet. ref'd))(reversing, under *Batson,* for striking a black female because she indicated she belonged to a minority club which the State felt might bias her in favor of the defendant (not race neutral), and she indicated she would have a problem assessing punishment (race neutral)); *McKinney v. State,* 761 S.W.2d 549, 550 (Tex.App.-Corpus Christi 1988, no pet.)(reversing, in an unlawfully carrying a weapon case, for striking a black female because of her race (not race neutral) and "the answer she gave to my question . . . that she would hold him not guilty even if we dispensed with the defenses that were offered" (race-neutral)); *Speaker v. State,* 740 S.W.2d 486, 489 (Tex.App.-Houston [1st Dist.] 1987, no pet.)(reversing when prosecutor admitted: "Although race is a factor I do consider, it is not an overriding factor and it was not an overriding factor in Mr. Speaker's trial in the selection of these jurors").

**19.** *Guzman,* 20 S.W.3d at 242; *Sparks v. Texas,* 68 S.W.3d 6, 11–12 (Tex.App.-Dallas 2001, pet. ref'd)(reversing, in injury to a child case, for striking a juror because he was a "young male with no children").

**20.** *Batson,* 476 U.S. at 89, 106 S.Ct. 1712 (internal quotes omitted; emphasis added).

**21.** *J.E.B.,* 511 U.S. at 146, 114 S.Ct. 1419. The Court continued: "As with race, the 'core guarantee of equal protection, ensuring citizens that their State will not discriminate . . ., would be meaningless were we to approve the exclusion of jurors on the basis of such assumptions, which arise solely from the jurors' [gender]." *Id.* (quoting *Batson,* 476 U.S. at 97–98, 106 S.Ct. 1712). *See also Edmonson v. Leesville Concrete Co.,* 500 U.S. 614, 619, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991); *Powers v. Ohio,* 499 U.S. 400, 409, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991).

However, the Supreme Court has not yet addressed "dual motivation" or "mixed motives" analysis in the *Batson* context.[22]

## B. The Federal "Dual Motivation" Analysis.

■ Federal courts, faced with mixed motives peremptory strikes, have turned to the Supreme Court's equal protection precedents, the very jurisprudence upon which *Batson* was based. The Supreme Court has made it clear that conduct which is motivated by an improper gender or racial purpose unconstitutionally violates the affected person's right to equal protection. However, if the actor offers proof that he would have acted identically in the absence of the improper motive, the factfinder is entitled to conclude that the action was not done *because of* a discriminatory purpose.[23] In other words, dual motivation is a defense which rebuts the opponent's prima facie case of purposeful discrimination. The federal circuits have used dual motivation analysis because, combined with *Batson* pretext analysis, it catches nothing more or less than what the Supreme Court requires—those strikes which are made *because of* race or gender.[24]

For example, an employer might fire a male receptionist because he prefers female receptionists. This is an improper gender-related motive. However, if the employer shows that he would have fired the receptionist, even if he had been a female, because the employee was rude, arrived late, lost mail messages, and could not operate the telephone or computer systems, the action is not *based on* an improper motive.[25] The action is fully supported

---

**22.** *But see Wilkerson v. Texas,* 493 U.S. 924, 926, 110 S.Ct. 292, 107 L.Ed.2d 272 (1989)(Marshall, J., dissenting)("The state trial court's implicit legal conclusion-that the Constitution does not prohibit a prosecutor from striking a juror even when the decision is based in part on his intuitive judgment [that the juror] would be partial to the defendant because of their shared race-cannot be squared with *Batson's* unqualified requirement that the state offer a neutral explanation for its peremptory challenge. To be 'neutral,' the explanation must be based wholly on non-racial criteria.")(internal quotes omitted). *See also* Geoffrey A. Gannaway, Comment, *Texas Independence: The Lone Star State Serves as an Example to Other Jurisdictions as it Rejects Mixed Motive Defenses to Batson Challenges,* 21 REV. LITIG. 376, 407–09, 417 (2002)(arguing that the Supreme Court, given the opportunity, would reject the use of the mixed motive defense in the *Batson* context).

**23.** *See Mt. Healthy City School Bd. of Ed. v. Doyle,* 429 U.S. 274, 284–87, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Village of Arlington Heights v. Metro. Hous. Devel. Corp.,* 429 U.S. 252, 270 n. 21, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977).

**24.** We are required to follow the decisions and reasoning of the United States Supreme Court on federal constitutional issues. *See State v. Guzman,* 959 S.W.2d 631, 633 (Tex. Crim.App.1998) (when deciding cases involving the United States Constitution, this Court is bound by United States Supreme Court case law interpreting it). Although we are not required to follow lower federal court interpretations of a federal constitutional right, we may find the reasoning in those cases persuasive. *See, e.g., Garcia v. State,* 827 S.W.2d 937, 942–43 (Tex.Crim.App.1992) (analyzing and following "the majority rule" in federal circuit courts concerning federal constitutional pretext arrest doctrine).

**25.** *See Price Waterhouse v. Hopkins,* 490 U.S. 228, 250, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (plurality op.) (applying mixed-motives analysis to Title VII gender discrimination lawsuit; once employee made prima facie showing of gender bias, employer must show, by preponderance of evidence, that it would have made same decision regardless of gender motive; ultimate burden of persuasion to prove intentional discrimination remains on plaintiff). The Court stated:

We have, in short, been here before. Each time we have concluded that the plaintiff who shows that an impermissible motive played a motivating part in an adverse employment decision has thereby placed upon

by permissible, gender-neutral reasons, although there may be some improper motives mixed in. An improper motive does not invalidate an otherwise rationally supported and non-discriminatory act.

The Second Circuit was the first to apply dual motivation analysis to a *Batson* challenge. In *Howard v. Senkowski*,[26] the prosecutor conceded that race had been a factor in his peremptory challenge to the panel's only two black members,[27] but he said that race had not been an overriding or a major factor.[28] The defendant countered that the prosecutor's race-neutral justifications were pretextual, but the trial judge disagreed, stating that race had been "part of a totality of factors" for the prosecutor's challenges, but that the prosecutor had also articulated neutral explanations which were not pretextual. The trial court concluded that the defendant had failed "to establish purposeful discrimination."[29] The Second Circuit held that dual motivation analysis applies to *Batson*

claims and remanded the case to the district court to decide whether the prosecutor would have exercised the peremptory challenge anyway, for solely race-neutral reasons.

In deciding that the dual motivation defense applies, the Second Circuit looked to the Supreme Court's pre-*Batson* equal protection cases, including *Washington v. Davis*,[30] *Village of Arlington Heights v. Metropolitan Housing Development Corp*,[31] and *Mt. Healthy City School Board of Education v. Doyle*.[32] In those earlier equal protection discrimination cases, the Supreme Court articulated several guiding principles:

1) Racial discrimination under the Equal Protection Clause requires "a racially discriminatory purpose"; racially "disproportionate impact" will not suffice.[33]

2) A plaintiff need not prove that the challenged action rested *solely* on ra-

the defendant the burden to show that it would have made the same decision in the absence of the unlawful motive. Our decision today treads this well-worn path. *Id.*

**26.** 986 F.2d 24, 27–31 (2d Cir.1993).

**27.** The Second Circuit quoted the prosecutor's explanation to the trial judge:
Q: You did state that race was a factor?
A: Yes.
Q: Race itself was a factor?
A: Right.
Q: Not simply those jurors taken together, but race was a factor?
A: Yes.
Q: You did believe their race, the fact that they were black, was bad for your case?
A: My feeling was they [sic] made them sympathetic to the defendant.
986 F.2d at 25.

**28.** The prosecutor explained that he had challenged one black veniremember "because her inability, when reading from a chart, to pronounce correctly the word 'prejudice' indicated to him that she lacked the educational

level and ability he thought necessary to comprehend the State's case." He challenged the other black prospective juror "because she had limited work experience; had five children and therefore might be sympathetic to the defendant; had expressed no opinion about mental illness, which might be relevant to one of the trial witnesses; and had no connection with law enforcement, either as a juror in prior cases, as a crime victim, or as a friend of those in law enforcement." *Id.*

**29:** *Id.* at 26.

**30.** 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976).

**31.** 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977).

**32.** 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

**33.** Of course, the same analysis applies to any other constitutionally "identifiable group," and not merely race, under the equal protection clause.

cially discriminatory purposes; rather the test is whether "a discriminatory purpose has been a motivating factor in the decision." [34]

3) If the plaintiff shows that a discriminatory purpose motivated a decision *in part*, the defendant then bears the burden of establishing that he would have made the same decision if the discriminatory purpose had not been considered or had not existed. [35]

### C. Batson *Applies Even When the Litigant's Peremptory Strike is Not Motivated "Solely" By a Discriminatory Purpose.*

The *Howard* court noted the Supreme Court's statement in *Batson* that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors *solely* on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." [36] The Second Circuit wondered whether the Supreme Court's use of "solely" in this sentence implied that only when a peremptory challenge was based *wholly* on an improper purpose did the litigant act unconstitutionally. [37] The State, in this case, similarly suggests that perhaps *Batson* applies only when a peremptory strike is based "solely" on race. The Second Circuit rejected that interpretation, as do we.

■ In *Howard*, the Second Circuit concluded that the Supreme Court did not intend such a reading of *Batson* or its progeny; rather, the Court must have intended a wholesale importation of its equal protection jurisprudence into the arena of peremptory challenges. [38] The *Howard*

---

**34.** *See, e.g., Pers. Adm. of Mass. v. Feeney,* 442 U.S. 256, 279, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979) (" 'Discriminatory purpose' ... implies that the decisionmaker ... selected a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group").

**35.** *Howard,* 986 F.2d at 26–27. The Second Circuit also noted that under *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), "[d]ual motivation analysis, in effect, may supplement so-called 'pretext' analysis, which applies to a claimant's 'burden of persuading the court that [he or] she has been the victim of intentional discrimination.'" *Id.* at 27 (quoting *Burdine,* 450 U.S. at 256, 101 S.Ct. 1089).

**36.** *Id.* at 29; *Burdine,* 450 U.S. at 256, 101 S.Ct. 1089.

**37.** The Second Circuit in *Howard* posed the issue thus:
 The question is whether the Court intended the adverb 'solely' to alter its prior equal protection jurisprudence such that the dual motivation analysis explicitly invoked in *Arlington Heights* [itself holding that a plaintiff, endeavoring to prove discriminatory purpose, does not have to prove that the

challenged action rested *solely* on racially discriminatory purposes] would be inapplicable to *Batson* challenges.
 *Howard,* 986 F.2d at 27.

**38.** The Second Circuit cited five reasons for its conclusion that the use of the word "solely" in *Batson* did not jettison the rest of the Supreme Court's equal protection jurisprudence regarding peremptory strikes:

1. "[I]t is always hazardous to seize upon a single word or phrase in a judicial opinion and build upon it a rule that was not in issue in the case being decided." The Supreme Court, in *Batson* "had no occasion to discuss dual motivation analysis, appropriate for the relatively infrequent cases where improper purpose is shown to be part of the prosecutor's motivation."
2. Other language in *Batson,* as well as that in later Supreme Court peremptory challenge cases have "phrased the motivation standard in traditional terms, without the qualifying adverb 'solely,'" thus implying that traditional equal protection "pretext" and "dual motivation" doctrines apply to the exercise of peremptory challenges.
3. "*Batson* explicitly relied on the Court's prior equal protection jurisprudence as articulated in *Davis* and *Arlington Heights,*"

Court thus held that the dual motivation principle applies to resolution of *Batson* challenges and remanded the case for con-

> thus it must have meant to import the "dual motivation" defense as well.
>
> 4. The Supreme Court could not have intended that only those peremptory strikes based "solely" upon an improper motive were constitutionally invalid because, in *Batson*, the Court had stated that "the mandate of eliminating official racial discrimination is 'most compelling' in the judicial system." Thus, the Court would be unlikely to use a more onerous standard for equal protection claims in the peremptory strike context than that applicable in other situations.
>
> 5. The Supreme Court intentionally left the mechanics of implementing *Batson* to the lower federal and state courts. "Thus, even if the partial motivation standard and the consequent dual motivation analysis of *Arlington Heights* had not been cited by *Batson*, it would have been appropriate for the lower courts to apply these approaches in implementing *Batson* requirements."
>
> 986 F.2d at 28–31.

**39.** On remand, the state court found that, under the dual motivation test, the prosecutor had not exercised his peremptory challenges in a manner that implicated racial discrimination. *See People v. Howard,* 158 Misc.2d 739, 747, 601 N.Y.S.2d 548, 553 (N.Y. County Ct.1993).

**40.** *Jones v. Plaster,* 57 F.3d 417, 421–22 (4th Cir.1995) (remanding for trial court to determine if litigant would have exercised peremptory challenge even if discriminatory purpose not present).

**41.** *United States v. Darden,* 70 F.3d 1507 (8th Cir.1995). In *Darden,* the prosecutor explained that the challenged juror was the youngest individual, "a black female, she's single, she has a 17 month old child and I believe she rents. She said virtually nothing.... It has been my experience ... that those people who don't answer questions are either naive or withholding information or have had virtually no experience with the criminal justice system ..." *Id.* at 1530–31. The trial court upheld the strike, noting that the most important reason given for the strike was the prospective juror's inexperience. *Id.* at 1531. The court of appeals affirmed, find-

sideration of that principle.[39] So far, four other circuits have agreed: the Fourth,[40] Eighth,[41] Eleventh,[42] and the

ing that the court's decision was equivalent to a finding that the prosecutor would have exercised the strike even without the one non-racially neutral motive. *Id.* at 1531–32. *Darden* was itself followed in *Weaver v. Bowersox,* 241 F.3d 1024 (8th Cir.2001). In that case, a 2–1 panel held that the Missouri Supreme Court's determination that a strike, based in part on race, did not violate *Batson* where it was also based on the race neutral factors of a reluctance and hesitation in answering questions, a lack of eye contact with the prosecutor, a lack of strength, and "cutting up" and talking during voir dire. *Id.* at 1032. The majority considered the state court's approach to be "consistent with the dual motivation analysis that we have recognized [in *Darden* ]":

> Here, the Missouri Supreme Court found that the peremptory strike "was based" upon the several race-neutral reasons given by the prosecutor. That decision, as in *Darden,* is equivalent to a finding (and necessarily implies) that the prosecutor would have exercised the strike even if he hadn't expressed a facially discriminatory motive. Thus, we find no "unreasonable" error in the Missouri Supreme Court's factual determination.

241 F.3d at 1032 (internal cites omitted). The dissenter did not quibble with the *Darden* standard, but was unwilling to accept the majority's position that the state court's finding (that the peremptory strike "was based" upon the several race-neutral reasons given by the prosecutor) necessarily implied that the prosecutor would have made the same decision absent the unconstitutional animus:

> The Supreme Court of Missouri merely held that "the prosecutor's decision to strike [Ms. Burns] was not based solely upon race or upon any assumptions about persons of her race." ... This holding begs the question because the relevant issue is not whether the prosecutor based his strike solely on race, but whether he would have stricken Ms. Burns had race not been a motivation.

*Id.* at 1032–33 (internal cites omitted).

**42.** *Wallace v. Morrison,* 87 F.3d 1271 (11th Cir.1996). In *Wallace,* the prosecutor explained that he used a "rating system" and

Third.[43] No circuit has disagreed.[44] Neither do we. We, like the federal circuit courts before us, adopt the dual motivation or "mixed motives" doctrine. Under this doctrine, if the opponent of a peremptory strike makes a prima facie showing of

"put a numerical figure of one to ten on the juror based on a gut reaction. Then I adjust that figure based on the answers that they give to certain questions. And I also make notes in red as to what some of those answers are. I then go down the list and indicate here, based on some of the responses to questions in their answer to the voir dire, whether I feel like they would be a State's juror or a defense juror. Just basically on their demeanor, the way they answer questions, and the answers to those questions. In this case, I basically went with the numbers that I had down and I struck those people that I felt would be most inclined to lean toward the defense. It was not based on race. Race was a factor that I considered just as I considered age, just as I considered their place of employment and so on and so forth." *Id.* at 1273. The trial court rejected the *Batson* claim, and the circuit court, relying on *Howard*, held that dual motivation analysis applied and that the prosecutor would have exercised the strikes even in the absence of any racial considerations. *Id.* at 1275.

43. *Gattis v. Snyder*, 278 F.3d 222 (3rd Cir. 2002). In *Gattis*, the prosecutor stated:

Number one, I believe that this juror was very, very conservative in his application of the possible application of the death penalty. He answered very quickly yes to the possibility of imposing a life sentence under the appropriate facts and circumstances, yet, to our belief, had a very difficult time in answering whether or not he could impose the death penalty under the appropriate circumstances . . .

Number two, he is an older gentleman and we have, I believe, four or five older gentlemen on the jury panel already. And I would suggest that it's the state's point of view that we would prefer to have some more women on the jury.

*Id.* Gattis argued that the prosecutor struck the juror merely because he was male. The State argued that even though one of the prosecutor's reasons for the challenge was gender-based, the paramount reason was the juror's reluctance to impose the death penalty. The state court applied the "dual motivation" test and found that the State showed that the prosecutor would have challenged

the juror even in the absence of any gender-related reason. *Id.* at 233. On appeal from a denial of federal habeas relief, the Third Circuit agreed "with *Howard* and the other cases cited that mixed motive analysis is appropriate in this context," and denied relief. *Id.* at 235.

44. The Ninth Circuit—not squarely presented with the issue-purported to withhold judgment on the issue. *Johnson v. Vasquez*, 3 F.3d 1327, 1329 n. 3 (9th Cir.1993). In that case, the prosecutor struck the only black member of the venire. *Id.* at 1328. When challenged, the prosecutor stated:

First of all, I passed four times and allowed counsel to have whatever juror he wanted. Then as I saw him excluding people from particular races, notably Mr. Li, I decided that, one, I didn't want a young woman . . . on the jury because of her age; and two, she worked for defense attorneys and that was another reason why I excused her. . . . I felt [the juror] also was uneducated and evasive in her responses to my questions. But particularly since she worked for a defense attorney, and had done so for the past six months, I felt that for those reasons alone and not for any reasons of race, I would excuse her.

*Id.* The trial court allowed the strike. The Ninth Circuit, finding that the record belied each of the prosecutor's facially race-neutral explanations, reversed. "When there is reason to believe that there is a racial motivation for the challenge, neither the trial courts nor we are bound to accept at face value a list of neutral reasons that are either unsupported in the record or refuted by it. Any other approach leaves *Batson* a dead letter." *Id.* at 1331. The court expressed no opinion on whether a mixed-motive defense in *Batson* jury challenge cases is valid one, *see id.* at 1329 n. 3, but seemed to apply it because it evaluated each of the "neutral reasons for the challenge" and found that each was a pretext. *See id.* at 1330. Under the "taint" view, the prosecutor's admission that race was a factor would have ended the inquiry. Since the Ninth Circuit examined and rejected each of the prosecutor's neutral reasons, it implicitly used dual motivation analysis.

discriminatory purpose, the strike's proponent must demonstrate that he would have exercised the peremptory strike even if the improper factor had not existed or contributed to the decision to strike the prospective juror. The trial court then determines whether the opponent has carried his burden in proving purposeful discrimination.

## III.

■ Under normal circumstances, we would now consider whether, under the dual motivation analysis, the trial court's ruling was "clearly erroneous." [45] To determine whether the factfinder's decision is "clearly erroneous," appellate courts examine the record to see whether the ruling leaves them with the "definite and firm conviction that a mistake has been committed." [46]

■ In the present case, however, the trial court did not make an explicit finding that the prosecutor offered sufficient neutral reasons to meet his burden of proof, by a preponderance of the evidence, that he would have peremptorily struck juror number 17 even if the improper factor of gender had not existed or contributed to his decision. Here, the defendant's original challenge was based upon possible racial discrimination. In response, the prosecutor articulated several different reasons for striking juror number 17:

1. He was single;
2. He was male;
3. He had no children; and
4. He "fell asleep or shut his eyes for long extended periods of time."

Those reasons were race neutral, but one of them-the fact that the prospective juror was male-invokes another possible *Batson* challenge, one based on gender. The prosecutor noted that he exercised peremptory strikes against both single, childless males, juror number 17 being one of them. He straightforwardly expressed his dual motivation: "We prefer to have probably *not only* women, *but also* individuals who have children who are going to comprehend the issues that are going to be at hand."

While one of the four specific reasons that the prosecutor offered for his peremptory strike was not gender-neutral, the other three reasons were both gender-neutral and rational.

Appellant met his initial *Batson* burden by making a prima facie showing that a constitutionally prohibited purpose—race—motivated the prosecutor to strike juror number 17. The State then met its initial burden by offering race-neutral reasons for its strike. The trial court explicitly determined that the prosecutor's strike was not made for racially discriminatory reasons. Appellant does not challenge this finding, nor does he challenge the use of the dual motivation doctrine. Rather, he contends that "the State made it abundantly clear that the controlling reason for striking the venireperson was his gender."

■ Appellant is correct in that it is abundantly clear that gender was *a* reason for the prosecutor's strike of juror number 17, but it is not abundantly clear that gender was the "controlling" [47] reason. In the present case, the trial judge did not independently evaluate the prosecutor's

**45.** See *Williams v. State,* 804 S.W.2d 95, 101 (Tex.Crim.App.1991); *Tennard v. State,* 802 S.W.2d 678 (Tex.Crim.App.1990); *Whitsey v. State,* 796 S.W.2d 707, 726 (Tex.Crim.App. 1989) (op. on reh'g).

**46.** *U.S. v. Fernandez,* 887 F.2d 564, 567 (5th Cir.1989) (citing and quoting *Anderson v. City*

*of Bessemer City, N.C.,* 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)).

**47.** A discrimination claimant need not show that the non-neutral purpose was the "controlling" reason for the action. Rather, the actor-here the prosecutor must show, by a preponderance of the evidence, that the ac-

gender-neutral explanations for the strike and did not explicitly find, under step two of the *Batson* analysis, whether the prosecutor would have struck juror number 17 regardless of his gender. Finally, the trial judge did not proceed to step three in the *Batson* analysis and explicitly determine whether appellant had failed to show, by a preponderance of the evidence, that the prosecutor's strike of juror number 17 was based on or because of gender discrimination.[48] Although we are required to "review the evidence adduced at the *Batson* hearing in the light most favorable to the trial court's ruling,"[49] and we do "not overturn a trial judge's finding that the State exercised its strikes in a . . . neutral manner unless such ruling is clearly erroneous,"[50] we cannot tell from the present record precisely what the trial court determined concerning the prosecutor's purportedly gender-based strike of juror number 17.

We will therefore remand this case for further proceedings.[51] We direct that this case be remanded to the court of appeals with instructions that it abate the appeal and order the trial court to conduct a further hearing and determine: 1) whether the prosecutor would have struck juror number 17 regardless of his gender; and 2) whether appellant met his ultimate burden of proof in showing that the prosecutor's strike of juror number 17 was based upon intentional discrimination (*i.e.*, either the answer to the first question is "no" or the answer to the first question is "yes" but the neutral justifications are pretexts for purposeful discrimination).

The judgment of the Court of Appeals is reversed, and the case is remanded to that court for further proceedings consistent with this opinion.

WOMACK, J., filed a dissenting opinion, joined by MEYERS, PRICE and JOHNSON, JJ.

JOHNSON, J., filed a dissenting opinion.

---

tion would have been taken regardless of the non-neutral purpose.

**48.** As the Supreme Court explained:

Proof that the decision by the Village was motivated in part by a racially discriminatory purpose would not necessarily have required invalidation of the challenged decision. Such proof would, however, have shifted to the Village the burden of establishing that the same decision would have resulted even had the impermissible purpose not been considered. If this were established, the complaining party in a case of this kind no longer fairly could attribute the injury complained of to improper consideration of a discriminatory purpose. In such circumstances, there would be no justification for judicial interference with the challenged decision.

*Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. at 270 n. 21, 97 S.Ct. 555. Furthermore, the ultimate issue is whether the opponent of the peremptory challenge has carried his ultimate burden of proof in demonstrating intentional and invidious discrimination. *Batson*, its progeny, the line of equal protection discrimination cases from which *Batson* was born, and our cases following *Batson* have uniformly held that it is the challenger's burden to prove discrimination by a preponderance of the evidence, not the actor's burden to prove a negative. *See, e.g., Batson*, 476 U.S. at 93, 106 S.Ct. 1712 ("As in any equal protection case, the burden is, of course, on the defendant who alleges discriminatory selection of the venire to prove the existence of purposeful discrimination") (internal quotation marks omitted); *Tompkins v. State*, 774 S.W.2d 195, 202 (Tex.Crim.App.1987) ("It is the burden of the accused to persuade the trial judge by a preponderance of the evidence that the allegations of purposeful discrimination are true in fact").

**49.** *Williams v. State*, 804 S.W.2d at 101.

**50.** *Whitsey v. State*, 796 S.W.2d at 720–23.

**51.** *See Henry v. State*, 729 S.W.2d 732, 737 (Tex.Crim.App.1987); *Keeton v. State*, 724 S.W.2d 58, 66 (Tex.Crim.App.1987).

WOMACK, J., filed a dissenting opinion, in which MEYERS, PRICE, and JOHNSON, JJ., joined.

When a party peremptorily challenges a juror for several reasons, one of which is unconstitutionally discriminatory, the Court says it will find no violation of the Equal Protection Clause if the party "demonstrate[s] that he would have exercised the peremptory strike even if the improper factor had not existed or contributed to the decision."[1] I do not agree that this "mixed motives" doctrine passes constitutional muster.

## I

I agree with Justice Marshall's dissent to the denial of certiorari in *Wilkerson v. Texas,* 493 U.S. 924, 110 S.Ct. 292, 107 L.Ed.2d 272 (1989), which is quoted in the Court's opinion.[2] (It is interesting to note that the merits of our decision in *Wilkerson*[3] never were reviewed by a federal court. After the Supreme Court declined to review our denial of habeas corpus relief, Wilkerson raised the issue in a federal habeas corpus proceeding. The United States courts held that he procedurally defaulted the claim by failing to make a *Batson* objection at his trial, which was held before the decision in *Batson.*)[4]

This case demonstrates that some lawyers will eliminate jurors for unconstitutional reasons. Today this Court makes it easier for them to do so. As the South Carolina Supreme Court said:

In our opinion, it is inappropriate to apply the dual motivation doctrine in the *Batson* context. Once a discriminatory

reason has been uncovered—either inherent or pretextual—this reason taints the entire jury selection procedure. By adopting dual motivation, this Court would be approving a party's consideration of discriminatory factors so long as sufficient nondiscriminatory factors were also part of the decision to strike a juror and the discriminatory factor was not the substantial or motivating factor. However, any consideration of discriminatory factors in this decision is in direct contravention of the purpose of *Batson* which is to ensure peremptory strikes are executed in a nondiscriminatory manner.

Further, as applied, *Batson* is only effective against the most obvious examples of racial and gender prejudices. To excuse such obvious prejudice because the challenged party can also articulate nondiscriminatory reasons for the peremptory strike would erode what little protection *Batson* provides against discrimination in jury selection. The challenged party should not have an opportunity to convince the judge that he would have struck the juror regardless of the discriminatory reason.[5]

## II.

In 1990, the Illinois Supreme Court "reject[ed] any notion that *Batson* offers solace to prosecutors who explain challenges on 'race-plus' grounds. Our chief reason is simple: The 'race-plus' concept is largely illusory in the context of a *Batson* hear-

1. *Ante* at 253.

2. *See ante* at 249 n. 22.

3. *Ex parte Wilkerson,* No. 17,443–02 (Tex.Cr. App. May 15, 1989) (unpublished).

4. *See Wilkerson v.Collins,* 950 F.2d 1054 (5th Cir.1992), *cert. denied,* 509 U.S. 921, 113 S.Ct. 3035, 125 L.Ed.2d 722 (1993).

5. *Payton v. Kearse,* 329 S.C. 51, 60, 495 S.E.2d 205, 210 (1998) (citations and footnote omitted). *Accord, State v. Shuler,* 344 S.C. 604, 545 S.E.2d 805 (2001).

ing." [6]

Today's decision rests on two "mixed motives" cases that the Supreme Court decided on January 11, 1977.[7] It does not take into account the distinctive difference between those cases and a *Batson* case—especially a Texas *Batson* case.

Each of the Supreme Court's cases involved a yes or no decision on a single question: Shall a village rezone property from single-family to multi-family? [8] Shall a teacher be rehired? [9] In such a context it might be possible to ask whether the same decision would have been made without the unconstitutional motive.

But in a *Batson* case in Texas the decision is not simply, shall Juror 17 be struck? The State did not, and could not, have ever considered whether it would have struck Juror 17 if he had been a woman. I respectfully say that neither the Court nor anyone else can say with any assurance that such a juror would have been struck.

What the Court is saying is that, in addition to his sex which the State improperly considered, Juror 17 had three undesirable characteristics that would support a decision to strike him. But whether Juror 17, regarded in isolation, was undesirable, was never the question for the State. The question, over and over, was whether he was more or less undesirable than another juror.

It must be remembered that in this trial, as in all non-death-penalty cases, the jury was selected by the "blind struck-jury" system. That is, after the voir dire examination, each party exercises its peremptory challenges by striking a certain number of names from the list of the jury panel, without knowing what names the opposing party is striking.[10] The prosecutor took a list of 32 names and had the opportunity to strike the names of the 10 least desirable people.[11] The process of decision is to strike the name of the least desirable person, then the one who was not as undesirable as that one but who is less desirable than any other person, and so on. The factors under consideration are not merely Juror 17's characteristics. All the characteristics of all 32 jurors were in play: education, occupation, residence, age, experience with law enforcement and the criminal justice system, religion, dress, attitude, answers to voir dire questions, length of residence in the county, posture, facial expressions, and so on *ad infinitum*. The prosecutor's task was to decide whether Juror 17 was more or less desirable than each of the other jurors.

Let us say that Juror 22 was a divorced woman with a child who had been arrested for shoplifting, who had recently moved to the county from another state, who had a high-school education, who worked as a waitress, who did not attend church, and who laughed at the defense attorney's

---

6. *People v. Hope*, 137 Ill.2d 430, 480, 148 Ill.Dec. 252, 275, 560 N.E.2d 849, 872 (1990), *vacated and remanded*, 501 U.S. 1269, 112 S.Ct. 13, 115 L.Ed.2d 1097 (1991), *prior decision adhered to*, 147 Ill.2d 315, 168 Ill.Dec. 103, 589 N.E.2d 503 (1992).

7. *See ante* at 249 n. 22 (citing *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977), and *Mt. Healthy School*

*Dist. Bd. of Ed.*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)).

8. *Village of Arlington Heights, supra.*

9. *Mt. Healthy, supra.*

10. *See* Tex.Code Crim. Proc. art. 35.25.

11. *See* Tex.Code Crim. Proc. art. 35.15(b) (10 peremptory challenges in a felony case with one defendant and in which the State does not seek the death penalty).

jokes. Let us assume that the State regarded as undesirable the criminal history of Juror 22's child, her religion, her short residence in the county, her level of education, and her laughter. We know from the prosecutor's statement that the State regarded as undesirable Juror 17's sex, marital status, parental status, and closed eyes. The question for the State was, which juror was less desirable? Who can say whether the comparison between Jurors 17 and 22 would have been the same if the State had not put Juror 17's sex into the balance?

Only two things can be said with reasonable certainty about this case: At some point the State found Juror 17 less desirable than another juror, and it admittedly made that evaluation by unconstitutionally considering Juror 17's sex. For a court to decide whether the State "demonstrate[d] that [it] would have exercised the peremptory strike even if the improper factor had not existed or contributed to the decision," [12] the court would have to find the undesirable characteristics of the 9 other jurors whom the State struck, and the characteristics of the juror whom the State would have struck if it had not struck Juror 17.

It may be impossible to say whether a party would have exercised a challenge against the same juror even if the party had not been relying in part on characteristics that offend the constitution.

I hold that the mixed-motive analysis is inconsistent with the law of equal protection in jury selection. The uncontroverted fact is that the appellant was convicted of capital murder by a jury from which the State admits it sought to exclude men. The unquestioned law is that the exclusion of men, because they are men, violates the Equal Protection Clause of the Fourteenth Amendment to the Constitution. The law and the facts require a new trial. I respectfully dissent.

JOHNSON, J., filed a dissenting opinion.

I respectfully dissent. *Batson* sets out that the opponent of the strike must make a *prima facie* case of discrimination on the basis of a suspect class, the proponent must then justify the strike on a basis which is neutral as to a suspect class, and the opponent may then challenge the validity of the proponent's explanation. Finally, the trial court decides whether an improper strike has been proved. If we will now condone strikes which are partially motivated by improper discrimination, we must also demand a heightened level of scrutiny by the trial court. To fail to do so will, I fear, encourage explanations which appear to pass muster if not looked at too closely, but would rightly be found to be improper if examined under an appropriately higher level of scrutiny.