Opinion issued November 16, 2006 













 





In The
Court of Appeals
For The
First District of Texas




NO. 01-05-00821-CR
____________

MADALYN VALDEZ, Appellant

V.

THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from County Criminal Court at Law No. 2
Harris County, Texas
Trial Court Cause No. 1284899
 

 
 
MEMORANDUM OPINION
             A jury found appellant, Madalyn Valdez, guilty of the offense of resisting
arrest


 and the trial court assessed her punishment at confinement for one year,
suspended the sentence, and placed her on community supervision. Our sister court
affirmed her conviction in Valdez v. State, No. 14-02-00664-CR, 2003 WL 21403369
(Tex. App.—Houston [14th Dist.] June 19, 2003, no pet.) (not designated for
publication).
          Appellant subsequently filed in the trial court a petition for a writ of habeas
corpus,


 alleging that the State suppressed or failed to disclose exculpatory material
or impeachment evidence


 in the underlying proceeding. After conducting an
evidentiary hearing limited to the submission of “affidavits, depositions [and]
interrogatories,”


 the trial court denied the petition. In two issues, appellant contends
that the trial court erred in denying her petition because it “used the wrong standard
in reviewing [her] petition” and its “findings of fact are clearly erroneous.” 
          We affirm.Factual and Procedural BackgroundIn the underlying trial, Harris County Sheriff’s Deputy P. Foose testified that
on January 4, 2002 at approximately 2:30 p.m., he assisted an undercover group of
organized crime officers in the execution of a search warrant of a residence located
at 2911 Shady Park. A short time after the officers entered the home, Foose saw
appellant, who identified herself as a resident of 2911 Shady Park, in the front yard
“being very belligerent, cursing at officers.” After this exchange, appellant drove
away from the home in her car. However, a short time later, Foose saw appellant next
door at 2907 Shady Park repeatedly walking in and out of the home. At about 4:00
p.m., Foose saw Sean Ibarra, one of the residents of 2907 Shady Park, in the front
yard area of that residence “taking pictures of officers at 2911 Shady Park.” 
          Deputy Foose explained that, to protect the identity of the undercover officers
executing the search warrant, he ordered Ibarra to stop taking photographs
immediately. Ibarra initially complied, but then “started laughing [and] continued
with taking pictures of the undercover officers.” When Foose approached Ibarra and
again ordered him to stop taking photographs, Ibarra fled toward the front door of
2907 Shady Park. Foose pursued Ibarra and caught up with him as he reached the
door. He grabbed Ibarra from behind and attempted to take him into custody. Ibarra
turned around, grabbed Foose, and began to strike and kick Foose’s arms and legs in
an attempt to get away. At that point, Foose saw appellant inside the doorway of
2907 Shady Park, shouting at Ibarra to fight Foose off and run inside. Ibarra then
threw his camera to appellant, but she “missed it,” and it landed in the front room of
the home. Appellant then approached Foose and Ibarra and began striking, kicking,
and pulling at Foose’s arm in an attempt to release Ibarra from Foose’s hold. In the
ensuing struggle, Foose explained “we all ended up just inside the front door, all the
momentum moved us inside.” Other deputies then began to enter the Ibarras’ home
to assist Foose. After Foose took hold of appellant and another officer took hold of
Ibarra, appellant continued to struggle by “pushing back, kicking back, cursing, [and]
telling [Foose] to leave her alone and get out of her house.” Foose was eventually
able to restrain, handcuff, and take appellant into custody. The deputies also arrested
Ibarra and his brother Erik, who had emerged from a back bedroom during the
struggle. As the deputies removed the three arrestees from the Ibarras’ home,
appellant spat upon one of the deputies. 
          Harris County Sheriff’s Sergeant A. Rocha testified that, on that same day, he
served as the scene supervisor for the execution of the search warrant at 2911 Shady
Park. Rocha explained that, upon entry into the home, officers encountered
approximately ten to twelve individuals—including several children—whom they
moved to the front yard. As a result of the search, the officers seized a substantial
quantity of narcotics from the home. As the officers executed the search warrant,
appellant arrived in her car and attempted to enter the property. When officers
instructed her to leave, appellant yelled and screamed at the officers before she
eventually drove away. A short time later, Rocha became aware of a disturbance at
the house next door at 2907 Shady Lane. Rocha went next door along with other
deputies to assist and saw Deputy Foose “trying to calm down and restrain” appellant. 
Rocha saw appellant kicking, hitting, and struggling with Foose as he attempted to
grab her arm. Rocha came to Foose’s aid and, together, they restrained and
handcuffed appellant.
          Harris County Sheriff’s Deputy D. Shattuck, a member of the Organized Crime
Division, testified that he was also among the officers who executed the search
warrant at 2911 Shady Park. Shattuck explained that, shortly after officers had
executed the search warrant, he saw appellant arrive at the home, “very belligerent,
cursing, stating that she wanted to come in the house.” Appellant told the officers
that it was “her fucking house and she could come into it if she wanted to.” After he
and another deputy told appellant that she could not come into the house, appellant
“flipp[ed] us the finger and [got] in the car, . . . [and] she spun the tires on the vehicle
and drove off down the street.” 
          Some time later, Deputy Shattuck heard Deputy Foose yelling, “stop!” He
turned and saw Sean Ibarra running away from Foose towards the home at 2907
Shady Park. Shattuck followed Foose as he pursued Ibarra to the doorway. Shattuck
then entered the home and saw Foose attempting to handcuff Ibarra while appellant
was “striking Foose with her fists and her hands or her feet.” Shattuck initially came
to Foose’s aid by grabbing Ibarra, but he then saw Ibarra’s brother, Erik, fleeing into
a nearby bedroom. Shattuck explained that Erik Ibarra appeared to be retrieving
something from a backpack which was lying on a bed. Fearing that Erik Ibarra was
attempting to obtain a weapon, he followed him into the bedroom and arrested him
at gunpoint. After Foose led appellant outside, she continued to resist—kicking,
cussing, screaming, and refusing to walk to a patrol car. When Shattuck went to
assist Foose, appellant spat on him. 
          Harris County Sheriff’s Deputy M. Moreno testified that he was also among
the officers who executed the search warrant at 2911 Shady Park. As the officers
were bringing the occupants of the home to the front yard, Moreno saw appellant
drive her car up to the property, and he met her at the street. Appellant explained to
Moreno that she lived at the home and she expressed concern about the welfare of the
children who had been among those gathered in the front yard. Moreno told appellant
that the officers were executing a search warrant and instructed her not to exit her car. 
Appellant repeatedly asked to enter the property, but Moreno and the other officers
denied her entry and warned her that she would be arrested if she interfered with the
execution of the search warrant. Appellant became “real frustrated . . . because she
couldn’t go in the house,” and her tone of voice was “real belligerent, cussing,” but
she eventually agreed to leave the premises. Sometime later, appellant returned to the
property and apologized to Moreno and the other officers for her earlier behavior,
explaining that she was simply concerned for the welfare of the children. Moreno
explained that he did not witness the subsequent events at 2907 Shady Park which led
to appellant’s arrest.
          Appellant and Sean Ibarra were tried together in May of 2002. As noted above,
the jury found appellant guilty of resisting arrest. However, the same jury could not
reach a verdict as to whether Sean Ibarra committed the offense of resisting arrest,
and the trial court granted a directed verdict in his favor in regard to the offense of
evading arrest. The State concedes that it may be “inferred from the subsequent
expunctions” that neither Sean nor Erik Ibarra was convicted of any offense alleged
to have occurred on January 4, 2002.
          On February 3, 2005, appellant filed her petition for a writ of habeas corpus
based upon evidence “known to the State but not disclosed” and “unavailable to
appellant in her original trial.” Appellant alleged that the State did not disclose
certain police reports as well as other evidence and that it failed to correct false
testimony during appellant’s trial in violation of her constitutional due process rights. 
          Appellant asserted that, during the execution of the search warrant at 2911
Shady Park, she witnessed improper treatment of the children who had been removed
from the home by the officers, claiming that, “[d]espite it being a winter day, the
children were placed outside the residence without coats or shoes and there they
remained for some time.” Appellant also asserted that the officers had their weapons
pointed at the children and that two of the female children “wet on themselves.” 
Appellant attempted to go onto the property to retrieve the children, but officers
refused her entry. Appellant denied causing any problems at this time or interfering
with the execution of the search warrant. She then went to the Ibarra’s home to get
a camera to document the officers’ treatment of the children, and she and Sean Ibarra
began to take photographs of the scene from the sidewalk across the street. As they
took photographs, Deputy Foose saw them and started toward them. Appellant and
Sean Ibarra then fled toward the Ibarra’s home, but Foose caught Sean Ibarra at the
front door and beat him, rendering him nearly unconscious. Foose then attacked
appellant inside the Ibarras’ home. Appellant argued that the only reason Foose
attacked her and Ibarra was to obtain control over the camera because it contained
evidence of police misconduct. She denied that she resisted arrest.
          On June 3, 2005, the trial court signed its order denying appellant’s petition for
a writ of habeas corpus. 
 
Standard of Review
          To prevail upon a post-conviction petition for a writ of habeas corpus, a
defendant bears the burden of proving, by a preponderance of the evidence, the facts
that would entitle her to relief. Ex parte Morrow, 952 S.W.2d 530, 534–35 (Tex.
Crim. App. 1997). In reviewing a trial court’s decision to grant or deny relief on a
petition for a writ of habeas corpus, we afford “almost total deference to the trial
court’s determination of the historical facts supported by the record, especially when
the fact findings are based on an evaluation of credibility and demeanor.” Ex parte
Peterson, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003). In such instances, we utilize
an abuse of discretion standard. Id. We afford the same amount of deference to the
trial court’s ruling on “applications of law to fact questions,” if the resolution of those
ultimate questions turns on an evaluation of credibility and demeanor. Id. However,
if the resolution of those ultimate questions turns on an application of legal standards
absent any credibility issue, we review the determination de novo. Id.
Brady Material
          In her second issue, appellant argues that the trial court erred in denying her
habeas corpus petition because it “used the wrong standard in reviewing” the petition
and “increased [her] burden” to show “overwhelming evidence to alter the verdict of
guilty.” She notes that she “presented a claim . . . that material exculpatory or
impeachment evidence had been suppressed or was not disclosed.” See Brady v.
Maryland, 373 U.S. 83, 86–87, 83 S. Ct. 1194, 1196–97 (1963). 
          Under Brady, the State has an affirmative duty to disclose evidence favorable
and material to a defendant’s guilt or punishment under the Due Process Clause of the
Fourteenth Amendment.


 Id. at 87, 83 S. Ct. at 1194; Thomas v. State, 841 S.W.2d
399, 407 (Tex. Crim. App. 1992). The United States Supreme Court has explained
that impeachment evidence is included within the scope of the term “exculpatory
evidence.” United States v. Bagley, 473 U.S. 667, 676, 105 S. Ct. 3375, 3380 (1985). 
Once such exculpatory evidence comes into its possession, the State’s duty under
Brady attaches, with or without a request from the defense for disclosure. Thomas,
841 S.W.2d at 407. For a court to find reversible error under Brady, a defendant must
show that: (1) the State failed to disclose evidence, regardless of the State’s good or
bad faith; (2) the withheld evidence is favorable to her; and (3) the evidence is
material, i.e., there is a reasonable probability that had the evidence been disclosed,
the outcome of the trial would have been different. Ex Parte Richardson, 70 S.W.3d
865, 870 (Tex. Crim. App. 2002); Hampton v. State, 86 S.W.3d 603, 612 (Tex. Crim.
App. 2002). 
          The State’s good or bad faith in withholding favorable evidence is irrelevant. 
Cook v. State, 940 S.W.2d 623, 627 (Tex. Crim. App. 1996); see United States v.
Agurs, 427 U.S. 97, 110, 96 S. Ct. 2392, 2400–01 (1976). In order to comply with
Brady, therefore, “the individual prosecutor has a duty to learn of any favorable
evidence known to the others acting on the government’s behalf in this case,
including the police.” Kyles v. Whitley, 514 U.S. 419, 437, 115 S. Ct. 1555, 1567
(1995). 
          We must analyze alleged Brady violations “in light of all the other evidence
adduced at trial.” Hampton, 86 S.W.3d at 612–13. As in any habeas corpus
proceeding, the applicant must prove the constitutional violation and her entitlement
to habeas relief by a preponderance of the evidence. Ex parte Richardson, 70 S.W.3d
at 870. If the appeals court finds a Brady violation, the remedy is a reversal. Id. 
          Here, in its conclusions of law, the trial court stated, in pertinent part:
1. There is no meaningful, significant, relevant evidence non-disclosed that was Constitutionally both material and favorable to
the Petitioner Valdez that would warrant a likely or reasonable
probability would have changed the jury verdict result of Guilty.
 
2. Any impeachment testimony of the matters raised in the non-disclosed supplemental report are not material. Meaningful, or
substantively relevant that would have amounted to over-whelming evidence to alter the verdict of guilty.
 
3. The illegality of Petitioner’s arrest is not a defense in the
prosecution for resisting arrest. (Tex. Pen. Code Ann. 38.03(B)).
 
4. There is no Constitutional Due process violation that was harmful
that would have had significant impact to change the verdict of
the jury of guilty in this case. [sic]

          In regard to the first conclusion of law, appellant asserts that “the trial court
accepted the State’s argument that because certain evidence was “obviously
erroneous,” its “impeachment value was virtually nil” and, therefore, the State was
not required to turn over the evidence under Brady. She argues that such evidence
“‘if used effectively might make a difference.” As noted, under Brady, the defendant
bears the burden of showing that, in light of all the evidence, it is reasonably probable
that the outcome of the trial would have been different had the State made a timely
disclosure of the evidence in question. See Bagley, 473 U.S. at 682, 105 S. Ct. at
3383; Agurs, 427 U.S. at 112–13, 96 S. Ct. at 2401–02; Hampton, 86 S.W.3d at 612. 
However, the “mere possibility that an item of undisclosed information might have
helped the defense, or might have affected the outcome of the trial, does not establish
‘materiality’ in the constitutional sense.” Agurs, 427 U.S. at 109–10, 96 S. Ct. at
2400; Hampton, 86 S.W.3d at 613. 
          Here, in its first conclusion of law, the trial court stated that there was no
“meaningful, significant, relevant evidence non-disclosed” that, had it been disclosed, 
there would have been “a likely or reasonable probability” the jury verdict “would
have changed.” This language articulates the correct standard of materiality, i.e.,
whether there is a “reasonable probability” that the outcome of the trial would have
been different if the evidence in question had not gone undisclosed. See Hampton,
86 S.W.3d at 612. 
          In regard to the trial court’s second and fourth conclusions of law, appellant
complains that, “[i]nstead of using the Constitutional standard of ‘may’ make the
difference or reasonable possibility,” the trial court “raised the standard to ‘likely or
reasonable probability would have changed the jury verdict.’” Appellant asserts that
the trial court placed upon her “the burden of showing ‘overwhelming evidence to
alter the verdict of guilty”’ and that any constitutional violation would have had a
“significant impact” on the result of the trial. Here, the trial court, in its discussion
of possible impeachment evidence, suggested that any undisclosed evidence must be
“over-whelming.” It also suggested that any due process violation must have a
“significant impact” on the case. 
          However, as noted above, the trial court had already concluded that there was
no meaningful non-disclosed evidence both “material and favorable” to appellant, and
it articulated the correct standard of materiality, i.e., whether there is a “reasonable
probability” that the outcome of the trial would have been different had the State
made a timely disclosure. See id. Although the trial court’s conclusions of law were
not well-phrased, again, we note that the “mere possibility that an item of undisclosed
information might have helped the defense, or might have affected the outcome of the
trial, does not establish ‘materiality’ in the constitutional sense.” Agurs, 427 U.S. at
110, 96 S. Ct. at 2400; Hampton, 86 S.W.3d at 613. Also, as noted above, we afford
almost total deference to a trial court’s rulings on application of law to fact questions
if the trial court’s determination of the historical facts is supported by the record. Ex
parte Peterson, 117 S.W.3d at 819. From the record before us, we cannot conclude
that the trial court erred in denying appellant’s petition on the grounds that it applied
“the wrong standard in reviewing its petition,” or that it “increased her burden.” 
          Within her second issue, appellant also asserts that the “trial court erred in”
finding that Sergeant Rocha gave a preliminary draft of his supplemental offense
report “only” to his supervisor, “accepting the State’s unsubstantiated ‘open file’
argument,” “ignoring the destruction of evidence issue,” and “in failing to address the
cumulative effect” of multiple Brady violations. She states that the trial court’s
finding that Sergeant Rocha “only gave his report to his lieutenant is bizarre and
irrelevant,” “[a]n open file cannot possibly excuse the State’s failure to demonstrate
the disclosure of Brady material,” the State “clearly destroyed key evidence,” and the
“false and misleading testimony” of the State’s witnesses “creates an insurmountable
wall of impeachment evidence that the State could not hope to overcome.”
          However, appellant does not explain how these assertions comport with her
specific issue, i.e., whether “the trial court used the wrong standard” in reviewing her
petition. To the extent that appellant is arguing generally that the trial court erred in
denying her petition, we again note that we afford almost total deference to a trial
court’s rulings on application of law to fact questions if the trial court’s determination
of the historical facts is supported by the record. Ex parte Peterson, 117 S.W.3d at
819. Here, appellant has not explained how the trial court abused its discretion in
ruling against her. To the extent that she is arguing that the trial court’s fact findings
are clearly erroneous, we address these arguments below in our discussion of her first
issue.
          We overrule appellant’s second issue.
Findings of Fact
          In her first issue, appellant contends that “[t]he trial court’s findings of fact are
clearly erroneous.” As noted above, the trial court made its determinations based on
the submission of affidavits, depositions and interrogatories. See Tex. Code Crim.
Proc. Ann. art. 11.072 § 6(b) (Vernon 2005). We note that the trial court was also
entitled to rely upon its own “personal recollection” of the underlying trial. Id. 
          We employ a deferential standard of review of the trial court’s resolution of
historical facts from conflicting affidavits and other documentary evidence. Manzi
v. State, 88 S.W.3d 240, 243–44 (Tex. Crim. App. 2002). As explained by the Texas
Court of Criminal Appeals:
If [a trial] court’s account of the evidence is plausible in light of the
record viewed in its entirety, the court of appeals may not reverse it even
though convinced that had it been sitting as trier of fact, it would have
weighed the evidence differently. Where there are two permissible views
of the evidence, the factfinder’s choice between them cannot be clearly
erroneous. This is so even when the [trial] court’s findings do not rest
on credibility determinations, but are based instead on physical or
documentary evidence or inferences from other facts.
Id. at 243 (quoting Anderson v. City of Bessemer City, North Carolina, 470 U.S. 564,
573–74, 105 S. Ct. 1504, 1511 (1985) (emphasis added)). To determine whether a
fact finder’s decision is “clearly erroneous,” appellate courts examine the record to
see whether the finding leaves them with the “definite and firm conviction that a
mistake has been committed.” Guzman v. State, 85 S.W.3d 242, 254 (Tex. Crim.
App. 2002). However, any such error that does not affect substantial rights must be
disregarded. Tex. R. App. P. 44.2(b). An “erroneous finding of fact will not require
reversal if the judgment is otherwise correct on its merits.” Able v. Able, 725 S.W.2d
778, 780 (Tex. App.—Houston [14th Dist.] 1987, writ ref’d n.r.e.). 
Timing of Appellant’s Trial
          First, appellant contends that the trial court erroneously found that her trial had
been severed from the trials of Sean and Eric Ibarra and that appellant had been tried
“last.” 
          In its finding of fact number eight, the trial court stated:
The Petitioner Valdez jury trial was severed from the others and was the
last—3rd to be tried—Sean Ibarra # 1094877 resisting arrest was found
by the jury on retrial to be not guilty; Eric Ibarra # 1094878, a directed
verdict of not guilty as to evading arrest. Of note, all three of these
defendants were represented by attorneys from the same offices/firm:
Sharon Levine, James Rivera, and Chris Tritico. 
 
          However, as noted by appellant, the record reveals that appellant and Sean
Ibarra were tried jointly in May 2002. At that trial, the jury found appellant guilty of
the offense of resisting arrest, but could not reach a verdict as to whether Sean Ibarra
committed the same offense. The trial court directed a verdict in favor of Sean Ibarra
on the offense of evading arrest. In July 2002, Sean Ibarra was retried for the offense
of resisting arrest, and a jury acquitted him. Also, in a subsequent trial, Erik Ibarra
obtained a directed verdict in his favor for the offense of evading arrest. Thus, the
record demonstrates that the trial court’s finding that appellant had been tried “last”
is clearly erroneous.
          Having found a clear error in the trial court’s factual finding, we must
determine whether the erroneous finding requires reversal. Appellant’s primary
complaint in her petition is that exculpatory evidence was withheld from her at her
trial. However, the mere fact that both Ibarras were acquitted in subsequent trials
does not prove either that exculpatory material was withheld from appellant during
her trial or that the outcome of her trial would have been different if that evidence had
been provided to her. As noted above, when appellant and Sean Ibarra were tried
jointly, with the same evidence, the jury could not reach a verdict as to whether Ibarra
was guilty of the offense of resisting arrest. The same jury found appellant guilty of
the same offense. 
          We cannot conclude that the trial court’s factual finding that appellant was
tried “last” was necessary to support the trial court’s denial of appellant’s petition. 
Accordingly, we hold that this clearly erroneous fact finding does not require
reversal.
Trial Court Accepted “Fantasy Testimony”
          Second, appellant contends that the trial court erred in “accepting fantasy
testimony and hypothetical evidence? [sic]. Bob and Sue at the Zoo as error.”
Appellant notes that “there was a discrepancy” between the preliminary draft of
Sergeant Rocha’s supplemental offense report, in which Rocha wrote that Deputy
Foose saw both Sean Ibarra and appellant outside taking photographs before the
incident, and Foose’s trial testimony, in which he stated that he saw only Sean Ibarra
outside taking photographs. 
          The State argued to the trial court that the discrepancy was of no consequence
and could be explained as “if a person saw both Bob and Sue standing in front of the
ring-tailed lemur exhibit at the zoo, and Bob was taking photos with his camera at the
time, the witness might casually say, ‘I saw Bob and Sue taking pictures of the lemurs
yesterday.’” 
          Here, appellant does not challenge a specific fact finding made by the trial
court. Instead, she complains that the preliminary draft of Rocha’s supplemental
offense report demonstrates the falsity of the testimony given by Foose during
appellant’s criminal trial and that “[r]ather than hold a hearing or require the State to
produce testimony . . . the trial court allowed the State to engage in fantasy
testimony.”
          We note that the trial court was not obligated to hold a hearing on appellant’s
application. Tex. Code Crim. Proc. Ann. art. 11.072, § 6(b) (stating that to make
its determination, court “may order . . . a hearing”). More importantly, appellant does
not explain how the above complaint, relating to an argument made by the State,
comports with her specific issue, i.e., “the trial court’s findings of fact are clearly
erroneous.” She does not refer us to any specific portion of the record that
demonstrates that the trial court in fact “accept[ed] fantasy testimony and hypothetical
evidence.” In fact, appellant notes that she even “testified that she was in the front
yard taking pictures when Foose approached.” Here, appellant has not explained how
the trial court made a clearly erroneous finding of fact.
 
The Shattuck Report
          Third, appellant contends that the trial court erroneously found no evidence
that “any State’s witness committed perjury or testified intentionally, knowingly false
regarding the events.” In finding of fact number thirteen, the trial court stated:
There is no evidence of the State of Texas participating in the non-disclosure of officer Rocha’s non-disclosed supplemental report; nor is
there any evidence that any State’s witness committed perjury or
testified intentionally, knowingly false regarding the events of January
4, 2002, at 2907 and 2911 Shady Park Houston, Texas.

Here, appellant complains that there is a conflict between Deputy Shattuck’s trial
testimony, in which he stated that he did not see Sean Ibarra taking photographs, and
his supplemental offense report and deposition testimony, in which he stated that he
did see Sean Ibarra taking photographs. Appellant asserts that, therefore, “the report
established Shattuck’s commission of perjury.” 
          During his deposition testimony, when asked about the discrepancy in his
report, Shattuck initially stated that he did not see Sean Ibarra taking photographs. 
However, when repeatedly confronted with the conflict between his testimony and
his report, Shattuck eventually stated that he did not remember whether he saw Sean
Ibarra engaged in photography or not. The State concedes that Shattuck’s 
supplemental report contained an erroneous statement that he saw Sean Ibarra “taking
photographs of all the undercover officers conducting the search warrant.” However,
the State asserts that the discrepancy in question resulted from an “innocent mistake.” 
          We note that “[d]iscrepancies in testimony alone do not make out a case of
perjury.” Losada v. State, 721 S.W.2d 305, 312 (Tex. Crim. App. 1986). Moreover,
far from establishing the commission of perjury, the record reveals that Shattuck’s
supplemental report largely corroborates his trial testimony and the trial testimony of
Deputy Foose and Sergeant Rocha about appellant’s actions in resisting the arrest of
Foose. In finding of fact number four, the trial court stated that “[t]he contents of
Shattuck’s supplemental report demonstrate violent, demeaning, abusive, and
assaultive conduct by [appellant].” Again, we afford almost total deference to the
trial court’s determination of the historical facts supported by the record. Ex Parte
Peterson, 117 S.W.3d at 819. Accordingly, we cannot conclude that the trial court’s
finding of fact number thirteen is clearly erroneous.
Open-File Policy
          Fourth, appellant contends that the trial court erred in “accepting hypothetical
affidavits as fact.” In finding of fact number nine, the trial court stated:
The assistant district attorney, Jennifer Cook, maintained an open file
policy to all counsel involved; and in those open files were the reports
and some supplements authored by the deputies involved in the incident
which led to the arrests of the three before named defendants, including
the Petitioner Valdez.
Appellant complains that the trial court accepted the State’s assertion that it
maintained an open file based on a “defective affidavit which appellant specifically
objected to as inadequate and improper.” Appellant asserts that the trial testimony
reveals that certain reports were not given to anyone under an “open file” policy and
“certain reports were never disclosed.” 
          An affidavit must show that the affiant is testifying from personal knowledge.
Tex. R. Evid. 602; Humphreys v. Caldwell, 888 S.W.2d 469, 470 (Tex. 1994).
Conclusory statements contained in an affidavit are not competent evidence.
Anderson v. Snider, 808 S.W.2d 54, 55 (Tex. 1991); Rizkallah v. Conner, 952 S.W.2d
580, 587 (Tex. App.—Houston [1st Dist.] 1997, no writ).
          Here, in her affidavit submitted to the trial court, the prosecutor, who tried
appellant’s resisting arrest case, stated that the State maintained an open file in
appellant’s case and that she “believed” that Deputy Shattuck’s supplemental report
was in the State’s file during appellant’s trial based upon distinctive markings that
appear on the copy of the supplement.


 
          Although appellant complains that the trial court adopted the fact that
Shattuck’s supplemental report was contained in the State’s file, the complained-of
finding states only that the State did in fact maintain an open file in which “some
supplements” authored by the deputies were contained. The trial court did not make
any specific finding regarding Shattuck’s supplemental report. Again, we afford
almost total deference to the trial court’s determination of the historical facts
supported by the record, especially when the fact findings are based on an evaluation
of credibility. Ex parte Peterson, 117 S.W.3d at 819. Accordingly, we cannot
conclude that finding of fact number nine is clearly erroneous.
Undisclosed Witnesses
          Fourth, appellant contends that the trial court erred in “failing to address the
undisclosed witness.” In finding of fact number seven, the trial court stated:
The trial testimony of the testifying officers corroborated the conduct of
the Petitioner Valdez as characterized in the reports’ of Foose, Rocha,
and Shattuck.

Appellant complains that the trial court ignored the testimony of Katy Police Officer
De La Cruz, which “directly contradicts Foose’s testimony regarding Valdez.” 
Appellant asserts that “De La Cruz . . . was only a few feet away, [but] he never saw
[appellant] hit or strike anyone. Appellant also complains that the trial court failed
to specify in the fact finding which of the “testifying officers” corroborated the
reports of Foose, Rocha, and Shattuck. Specifically, appellant asserts that “it is
undisputed that Moreno and Palermo didn’t corroborate any such conduct.” 
          Although Officer De La Cruz did not testify at appellant’s trial, his deposition
is in the record. In his deposition testimony, De La Cruz stated that appellant “was
putting up some kind of struggle . . . I don’t know if she was throwing punches or just
yelling and screaming.” De La Cruz also testified, in response to questioning, that
he did not see or “did not know” if appellant was hitting or spitting on anybody that
day. It is not clear from the record when De La Cruz made his observations or from
where he made them. Nevertheless, rather than “directly contradict[ing] Foose’s
testimony regarding [appellant],” the small excerpt of De La Cruz’s deposition
testimony contained in the record largely corroborates the various officer accounts
that appellant was “putting up some kind of struggle.” 
          Moreover, during appellant’s trial, each deputy testified that he saw appellant
push, hit, or kick Deputy Foose in an effort to resist arrest or aid Sean Ibarra in
resisting arrest. Deputy Moreno testified that he did not witness the incident inside
2907 Shady Park that led to appellant’s arrest. However, Moreno did state that
appellant was “real belligerent, cussing,” outside of the 2911 Shady Park home during
execution of the search warrant—which is consistent with the other deputies’
testimony. Deputy Palermo, who actually witnessed the incident inside 2907 Shady
Park, testified that appellant was “hitting on [Foose’s] arms, kicking him in the legs,
just pulling away trying to break his grasp of her.” This corroborates the testimony
of the “testifying officers.” 
          Again, we afford almost total deference to the trial court’s determination of the
historical facts supported by the record, especially when the fact findings are based
on an evaluation of credibility. Ex parte Peterson, 117 S.W.3d at 819. Accordingly,
we cannot conclude that finding of fact number seven is clearly erroneous. 
Appellant’s Conduct
          Fifth, appellant contends that the trial court “erred in regards to [appellant’s]
conduct.” In finding of fact number three, the trial court stated:
The petitioner in this case kicked, hit, and pulled at deputy Foose while
the officer was attempting to arrest Sean Ibarra for evading arrest. 
When the officer attempted to arrest Petitioner for interfering with Sean
Ibarra’s arrest, Petitioner Valdez pushed, kicked, and hit deputy Foose
to prevent the officer from effectuating the arrest and handcuffing the
Petitioner. Another police officer had to assist deputy Foose to subdue
the violent and abusive Petitioner. 

Specifically, appellant argues that the trial court’s factual finding number three is in
error because “it relies upon the very officers that have previously testified falsely or
differently and totally ignores the testimony of Ring and De La Cruz.” However, as
discussed above, the deposition testimony of De La Cruz does not contradict the
testimony of the deputies. 
          Assistant District Attorney Sally Ring, who accepted the criminal cases against
appellant and the Ibarras after receiving information from the deputies at the scene,
testified that Deputy Foose told her that there were “some individuals who were
interfering with the execution of the search warrant. They were coming on the
property. Making comments. They had cameras and they wouldn’t allow the officers
to do their jobs.” 
          Appellant asserts that this comment to Ring directly countered anything
Deputies Foose or Shattuck put in their reports and was directly opposite to what
Foose testified to in the criminal trials. Appellant also asserts that without the alleged
interference with the execution of the search warrant, Foose had no probable cause
to arrest either appellant or the Ibarras. Alternatively, she claims that Ring joined a
conspiracy to falsify the evidence against appellant, to destroy evidence, and to
violate the legal rights of appellant. 
          Ring’s deposition testimony about her conversation with a deputy at the scene
does not necessarily constitute favorable or material impeachment evidence in
appellant’s case. In her affidavit testimony, Ring stated that she could not recall if
it was Foose or Palermo who called her to accept the criminal cases against appellant
and the Ibarras. Nevertheless, attributed to either Foose or Palermo, the statements
do not necessarily contradict any of the other testimony about appellant’s behavior
at 2911 Shady Park. As noted, each deputy testified that, during the execution of the
search warrant, appellant attempted to “come onto the property,” that she was
verbally abusive to the officers, and, in that sense, was interfering with the execution
of the search warrant. Moreover, Ring clearly asserted in her deposition that she did
not remember talking specifically about appellant with any of the officers that day. 
Ring’s testimony, in both her deposition and affidavit, does not support an inference 
that either Foose or Ring committed perjury or established a criminal conspiracy with
respect to appellant’s resisting arrest case.
          More importantly, none of the allegations made under appellant’s argument
actually challenges the trial court’s finding that “[appellant] kicked, hit, and pulled
at deputy Foose while the officer was attempting to arrest Sean Ibarra for evading
arrest” and that “when [Foose] attempted to arrest [appellant] for interfering with
Sean Ibarra’s arrest, [she] pushed, kicked, and hit deputy Foose to prevent [Foose]
from effectuating the arrest and handcuffing [appellant].” Accordingly, we cannot
conclude that finding of fact number three is clearly erroneous.
Imputation of Knowledge of Brady Material
          Sixth, appellant contends that the trial court erred in “absolving the State of the
officer’s conduct.” Appellant again references finding of fact number thirteen, in
which the trial court stated:
There is no evidence of the State of Texas participating in the non-disclosure of officer Rocha’s non-disclosed supplemental report; nor is
there any evidence that any State’s witness committed perjury or
testified intentionally, knowingly false regarding the events of January
4, 2002, at 2907 and 2911 Shady Park, Houston, Texas.

Appellant argues that the trial court’s finding is in error because “it ignores precedent
on the attribution of wrongdoing to the State.” Appellant notes that “[a] police
officer’s knowledge of Brady material, along with anyone else acting for the
government, is imputed to the prosecutor.” 
          However, the trial court’s finding that the “State of Texas” did not participate
in the non-disclosure of evidence cannot be read so as to be in contravention to the
rule that a police officer’s knowledge of Brady materials is imputed to a prosecutor. 
Moreover, appellant, in her argument, does not actually challenge the trial court’s
finding that the State did not participate in the non-disclosure of Sergeant Rocha’s
report. Accordingly, we cannot conclude that finding of fact number thirteen is
clearly erroneous.
Sergeant Rocha’s Supplemental Report and the “Destruction of Evidence”
          Finally, appellant contends that the trial court erred in finding that Sergeant
Rocha gave a preliminary draft of his supplemental offense report “only” to his
supervisor. Appellant also contends that the trial court erred in “ignoring the
destruction of evidence issue.”
          In its finding of fact number eleven, the trial court stated:
Rocha’s non-disclosed report recounted generally the observations of
deputy Foose’s attempts to handle the 3 aforementioned suspects.
Rocha’s draft supplement were however inconsistent with Foose’s trial
testimony as it related to whether the Petitioner Valdez and Sean Ibarra
were “both” taking photos as well as to whether or not Sean had resisted
arrest.

In its finding of fact number ten, the trial court stated:
Not disclosed at any time prior to, during or after was a preliminary draft
by officer Rocha of a police supplemental report which he gave only to
his supervisor, Lieutenant R. Williams. 

          Appellant asserts that the trial court “attempt[ed] to overcome” its finding that
Sergeant Rocha’s supplemental report “was inconsistent with Foose’s trial testimony
as it related to whether [appellant] and Sean Ibarra were both taking photos” by
“adding a factual finding that the report was given only to Rocha’s lieutenant.” She
contends that the “factual finding is incorrect and unsupported by the record.” 
          The State concedes that it did not disclose to appellant the preliminary draft of
Sergeant Rocha’s supplemental report when appellant’s resisting arrest case was
pending. When asked during appellant’s trial if he had filed a supplemental report,
Rocha stated that he had not. Subsequently, in his deposition testimony, Rocha
explained that the document in question constituted a “preliminary draft” which he
had attempted to submit to his lieutenant. The lieutenant did not accept it because it
was unnecessary for a field supervisor to prepare or sign a supplemental offense
report concerning events already documented in the reports of the other deputies. 
During pre-trial discovery in related federal litigation, the State provided to appellant
a copy of Rocha’s two-page draft. 
          In the draft, Sergeant Rocha described his observations upon entering the
residence at 2907 Shady Park as follows:
As I entered the residence, Deputy Preston Foose, a uniformed officer,
and Deputy Dan Shattuck, an undercover officer, were trying to get
control of 3 suspects; Madalyn Valdez, Sean Ibarra, and Erik Ibarra. 
Suspects Madalyn Valdez and Sean Ibarra were both kicking hitting
Deputy Foose . . . . I grabbed suspect Madalyn Valdez by the left arm
and attempted to pull her away from Deputy Foose. 
Rocha’s account essentially corroborates the trial testimony of Foose. However,
appellant asserts that portions of Rocha’s draft supplemental report contain
discrepancies which constitute impeachment evidence. 
          Appellant points out that Sergeant Rocha’s draft states that he “spoke with
Deputy Foose who stated that [appellant] and Sean Ibarra were taking photographs
of the undercover officers as they exited the residence.” Appellant notes that, in
contrast, Foose’s report states that he saw only Ibarra taking photographs from 2907
Shady Park. Appellant also complains that the Rocha draft states that the film in
question was destroyed by the officers although the officers all testified that they did
not know what happened to the film. Appellant argues that Rocha’s draft was Brady
material that the State had a duty to disclose because it “more closely tracks the
testimony of Sean Ibarra and [appellant] and directly refutes Foose’s and Shattuck’s
reports and criminal trial testimony.” 
          Initially, we note that appellant herself testified that she was in the front yard
of 2907 Shady Park taking photographs when first encountered by Deputy Foose. 
Thus, in that sense, Sergeant Rocha’s draft did not contain evidence that was “new”
or “undisclosed” to appellant. 
          Moreover, in regard to the inconsistency between Sergeant Rocha’s draft and
Deputy Foose’s trial testimony, Rocha explained in subsequent testimony that his
draft did not accurately recount what Foose told him at the scene. In his affidavit
testimony, Rocha acknowledged the “inaccuracy” in his supplemental report and
concedes the possibility that he “might have wrote it wrong.” Rocha stated that had
he finalized the draft and filed it as an official report, he would have corrected the
error. Appellant counters that “Rocha’s affidavit is laughable” and “is impeachment
evidence all by itself.” 
           From this evidence, the trial court could have reasonably found that Sergeant
Rocha’s draft was in fact a preliminary draft of his supplemental report that he gave
only to his supervisor. The evidence also supports the trial court’s finding of fact
number twelve, in which it stated that any “inconsistencies, whether intentional or
not, were both minor and not of significant impeachment evidence impact.” Again,
we emphasize that we afford almost total deference to the trial judge’s determination
of the historical facts supported by the record, especially when the fact findings are
based on an evaluation of credibility and demeanor. Ex parte Peterson, 117 S.W.3d
at 819. Accordingly, we cannot conclude that finding of fact number ten is clearly
erroneous.
          We also note that Sergeant Rocha’s draft does not expressly state that the film
in question was actually destroyed. The draft merely states that Rocha told the
mother of Sean and Erik Ibarra that “the cameras involved would be returned to her,
but the film would be removed.” 
          We overrule appellant’s first issue.
Conclusion
          We hold that the trial court did not err in denying appellant’s petition for a writ
of habeas corpus. Accordingly, we affirm the order of the trial court.
 
 
 
 
                                                                        Terry Jennings
                                                                        Justice
 
 
Panel consists Chief Justice Radack and Justices Jennings and Alcala.
 
Do not publish. Tex. R. App. P. 47.2(b).