Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio



## MEMORANDUM OPINION

No. 04-10-00176-CR

Quinton **COX**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 187th Judicial District Court, Bexar County, Texas
Trial Court No. 2009CR2523
Honorable Raymond Angelini, Judge Presiding

Opinion by:    Rebecca Simmons, Justice

Sitting:       Phylis J. Speedlin, Justice
             Rebecca Simmons, Justice
             Steven C. Hilbig, Justice

Delivered and Filed:  May 18, 2011

AFFIRMED AS REFORMED

Appellant Quinton Cox appeals his conviction for the murder of April Phillips. Cox raises three issues on appeal: (1) the evidence was legally insufficient to support his conviction; (2) the erroneous denial of his *Batson* challenge; and (3) the erroneous denial of his motion for mistrial. The State cross-appeals, arguing that the trial court erred by failing to include an affirmative finding of a deadly weapon in the judgment. We modify the trial court's judgment to include a deadly weapon finding and affirm the judgment as modified.

## BACKGROUND

On the night of her death, April Phillips drove her Jeep to a convenience store. She approached a group of people in the parking lot to ask for their help because she had just been robbed. Among the members of the group were Cox, Marshall Giles, Jamie Barnum, Kenneth Lemons, and Caresse Madison. The group agreed to help April, and they all got into her Jeep; Cox drove. After several hours of driving around, Lemons realized that they were not looking for the person who had robbed April and asked Cox what they were doing. According to Lemons, Cox told him that they were going to rob April. Around 4:00 a.m., Cox dropped off Lemons, Barnum, and Madison, but April and Giles stayed with Cox in the Jeep.

Cox continued to drive around for another two or three hours, and he eventually stopped the Jeep near Walters Street Bridge. Cox and April got out of the Jeep and walked under the bridge. Later, Cox returned to the car without April. He threw a gun onto Giles's lap and told him not to tell anyone what had happened. San Antonio Police Patrol Officer Robert Gaitan later found April's body under the bridge. Cox was convicted by a jury for the murder of April and sentenced to a term of fifty-five years' confinement in the Institutional Division of the Texas Department of Criminal Justice. Cox appeals his conviction.

## SUFFICIENCY OF THE EVIDENCE

In his first issue, Cox asserts that the evidence linking him to April's death is factually insufficient because the testifying witnesses were not credible.

### A. Standard of Review

The Court of Criminal Appeals recently determined that there is no meaningful distinction between the factual sufficiency standard of *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996), *overruled by Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010),

and its subsequent line of cases, and the legal sufficiency standard of *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Brooks v. State*, 323 S.W.3d 893, 894 (Tex. Crim. App. 2010). Guided by *Brooks*, we now apply the *Jackson* legal sufficiency standard of review to a factual sufficiency challenge. *See id.* at 895. We therefore construe Cox's factual sufficiency challenge as a legal sufficiency challenge.

Under *Jackson*, we examine "all of the evidence in the light most favorable to the verdict," asking if a jury was "rationally justified in finding guilt beyond a reasonable doubt." *Id.* at 899. We must decide whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. "The jury is the exclusive judge of the credibility of witnesses and of the weight to be given testimony, and it is also the exclusive province of the jury to reconcile conflicts in the evidence." *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000); *see also* TEX. CODE CRIM. PROC. ANN. art. 38.04 (West 1979).

## B. Evidence Linking Cox to April's Death

Giles testified at trial that after Cox and April got out of the car, he saw Cox pull a gun from his pocket and shoot April two or three times. Giles stated that he then averted his eyes, but heard additional gunshots. He further testified that the last thing he saw was April rolling down a hill and that he thought she was dead at that point. Dr. Randall Frost, who performed an autopsy on April, testified that she suffered five gunshot wounds. Barnum, who was in the Jeep earlier that night, testified that the day after April's death, he and Madison were hanging out at a basketball court when Cox approached them. According to Barnum, Cox told them that he "got rid of" April the previous night. Barnum testified that he asked Cox what he meant, and Cox clarified that he had "killed her." Based on Giles's and Barnum's testimony, a rational jury

could have found that Cox murdered April. *See Jackson*, 443 U.S. at 319; *Wesbrook*, 29 S.W.3d at 111.

Cox argues that Giles's testimony was not believable because he was on several drugs and that Barnum's testimony was not believable because he had admitted to being a drug dealer. Giles admitted to taking ecstasy pills and two or three Xanax pills and that he had fallen asleep at several points during the night. However, the jury, who heard Giles's and Barnum's testimony, "is the exclusive judge of the credibility of witnesses." *See Wesbrook*, 29 S.W.3d at 111; TEX. CODE CRIM. PROC. ANN. art. 38.04 (West 1979). We therefore overrule Cox's first issue.

## *BATSON* CHALLENGE

In his second issue, Cox appeals the denial of his *Batson* challenge. During voir dire, the State used a peremptory strike on venire member 39, an African-American woman. Cox, also an African-American, complains that the State struck venire member 39 on the basis of race.

## A. Applicable Law

The Equal Protection Clause of the Fourteenth Amendment prohibits race-based peremptory strikes. *Batson v. Kentucky*, 476 U.S. 79, 85 (1986); *Guzman v. State*, 85 S.W.3d 242, 245–46 (Tex. Crim. App. 2002). A defendant is entitled to a new trial if even a single venire member is struck "from the jury panel for racial reasons." *Whitsey v. State*, 796 S.W.2d 707, 716 (Tex. Crim. App. 1989). A race-based *Batson* challenge by a defendant in a criminal case involves three steps: (1) the defendant must present a prima facie case showing the State's racially discriminatory intent; (2) the burden of production then shifts to the State to offer a race-neutral justification, which the defendant may rebut; and (3) the trial court determines whether the defendant has proved purposeful racial discrimination. *See Batson*, 476 U.S. at 96–98;

*Guzman*, 85 S.W.3d at 245–46.  The opponent of the strike has the burden to show purposeful racial discrimination.  *Batson*, 476 U.S. at 93; *Guzman*, 85 S.W.3d at 246.

To present a prima facie case of racial discrimination, the defendant may "show that he is a member of a cognizable racial group and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race."  *Batson*, 476 U.S. at 96 (citation omitted); *accord Wamget v. State*, 67 S.W.3d 851, 857–58 (Tex. Crim. App. 2001).  "[T]he defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race."  *Batson*, 476 U.S. at 96; *accord Wamget*, 67 S.W.3d at 859.

In response to a prima facie case, the State must offer race-neutral explanations for its strikes.  *See Batson*, 476 U.S. at 97; *Guzman*, 85 S.W.3d at 245–46.  Factors indicating that the State's explanations are mere pretexts for race-based strikes include: (1) the State's reason for the strike is unrelated to the facts of the case; (2) the State does not question or meaningfully question the venire member; (3) the State disparately treats the venire member struck and other similarly situated venire members; (4) the State asks different questions of the venire member struck than of the other venire members; and (5) the State's explanation was based on a group bias rather than the individual's traits.  *Whitsey*, 796 S.W.2d at 713–14; *Harper v. State*, 930 S.W.2d 625, 635 (Tex. App.—Houston [1st Dist.] 1997, no pet.).

We will reverse a trial court's ruling on a *Batson* challenge if it is clearly erroneous.  *Hill v. State*, 827 S.W.2d 860, 865 (Tex. Crim. App. 1992).  Because pretext for discrimination is a question of fact, we give great deference to the trial court's observation of the attorneys and the prospective jurors and view the record in the light most favorable to the trial court's ruling.  *See*

*Gibson v. State*, 144 S.W.3d 530, 534 (Tex. Crim. App. 2004); *Williams v. State*, 804 S.W.2d 95, 101 (Tex. Crim. App. 1991).

## B. Analysis

The State does not dispute that Cox presented a prima facie case but argues that it offered a race-neutral explanation for striking venire member 39: she could not sit in judgment of another person. Cox argues that this explanation is a pretext because venire member 39 later clarified that she could sit in judgment of another if her judgment was based on facts, and, thus, the State's basis for striking venire member 39 is a pretext.

The State asked the venire panel whether their religious, moral, or other types of beliefs would make it difficult or impossible to judge another person. In response, venire member 39, and three other venire members raised their hands.[1] Venire member 39 approached the bench and told the judge, "[M]y belief[] is that you judge no one because you don't want to be judged. Now if something is facts, I can give you something based on facts, but I don't judge." Venire member 39 ultimately stated that she could listen to the evidence and make determinations if they were "factual." The trial judge then excused venire member 39, and stated, "I just misunderstood her." Prior to the jury being sworn, Cox raised his *Batson* challenge with regard to venire member 39, who the State struck with a peremptory strike. The State explained why she was struck:

> Because - - I know she approached the bench, but on numerous occasions she said she will not judge. And I wrote, "she will not judge, get rid of her." Then she said, "Well, I'll decide on the facts, but I don't want to judge." So I was worried about the case-in-chief and I was worried about punishment. Because both of them are some sort of judgment, and so that's why we struck her. And Juror number 10 was a Black gentleman and we didn't strike him.

---

[1] Cox struck the other venire members for cause.

We first note that the State's proffered explanation for striking venire member 39 was race-neutral. *See Goode v. Shoukfeh*, 943 S.W.2d 441, 446–47 (Tex. 1997) (noting that striking a juror because she could not sit in judgment of another person is a race-neutral explanation). It was thus Cox's burden to prove that this explanation was given as a pretext for discrimination. *See Johnson v. State*, 68 S.W.3d 644, 649 (Tex. Crim. App. 2002). Cox argued that this explanation was a pretext because of venire member 39's clarifying statements to the court that she could judge based on facts. At most, however, this merely proves that the State's reason for its peremptory strike was incorrect, but it is not conclusive of the State's discriminatory intent. *See Ford v. State*, 1 S.W.3d 691, 694 (Tex. Crim. App. 1999) ("All appellant has proven on appeal is that the reason given was incorrect; this is not equal to proving that the reason given was a pretext for a racially motivated strike."). The trial court, which must assess the State's credibility and demeanor, could have believed, based on venire person 39's contradictory statements about her ability to judge, that the State had residual doubts about her ability to judge during the guilt and punishment phases of the trial. *See id.* at 693–94. Therefore, we overrule Cox's second issue.

## MOTION FOR MISTRIAL

In his third issue, Cox complains of the trial court's failure to grant his motion for mistrial. During the punishment phase, the State sought to introduce a prior conviction. To do so, the State called Gina Martinez, a fingerprint classifier from the Bexar County Detention Center, to compare a set of fingerprints from Cox's jail booking slip to the fingerprints she took from Cox. Cox objected on grounds of lack of adequate notice regarding the particular conviction. The State could not locate a copy of the notice that was sent. As a result, the trial

judge instructed the jury to disregard Martinez's testimony regarding the booking and judgment. Cox then moved for a mistrial, and the court denied the motion.

## A. Standard of Review

We review a trial court's denial of a mistrial under an abuse of discretion standard and "must uphold the trial court's ruling if it is within the zone of reasonable disagreement." *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004). When reviewing whether a trial court abused its discretion, we consider "most, if not all, of the same considerations that attend a harm analysis": (1) the severity of the misconduct in terms of its prejudicial effect; (2) any curative measures adopted to cure the misconduct; and (3) the likelihood that the same punishment would have been assessed absent the misconduct. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004) (applying the harm analysis factors outlined in *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998)).

A trial court may grant a mistrial in circumstances where "error is so prejudicial that expenditure of further time and expense would be wasteful and futile." *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). An instruction to disregard ordinarily remedies an improper question and answer regarding an extraneous offense. *Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000). However, a mistrial is required in instances where a reference is "clearly calculated to inflame the minds of the jury or was of such a damning character as to suggest it would be impossible to remove the harmful impression from the jurors' minds." *Rojas v. State*, 986 S.W.2d 241, 250 (Tex. Crim. App. 1998). In other words, the reference must be "of such character as to suggest the impossibility of withdrawing the impression produced on the minds of the jurors." *Ladd*, 3 S.W.3d at 567.

**B. Analysis**

The State was unable to prove that it gave notice to Cox of its intent to use the prior conviction. However, no evidence of a particular prior conviction was admitted into evidence. The jury heard from Martinez only that Cox's fingerprints from the booking slip matched a prior criminal conviction against Cox. Martinez never identified the nature of the offense. The court, immediately after sustaining Cox's objection, instructed the jury to disregard Martinez's testimony. *See Ovalle*, 13 S.W.3d at 783. Finally, the jury had convicted Cox of April's murder after hearing evidence of the very violent end to April's life. Other evidence of Cox's misconduct while he was incarcerated was also admitted into evidence during the punishment phase of trial. *See Apolinar v. State*, 106 S.W.3d 407, 414–15 (Tex. App.—Houston [1st Dist.] 2003) (concluding that admission of an extraneous offense was harmless because the jury had already heard evidence of appellant's prior violent conduct), *aff'd on other grounds*, 155 S.W.3d 184 (Tex. Crim. App. 2005).

Because the jury was not informed of any details of Cox's prior conviction, the trial court promptly instructed the jury to disregard Martinez's testimony, and evidence of Cox's other misconduct had already been admitted, we cannot say that the trial court abused its discretion in denying Cox's motion for mistrial. Accordingly, we overrule Cox's third and final issue.

**DEADLY WEAPON FINDING**

In a cross appeal, the State asserts that because the jury made a deadly weapon finding, the trial court erred when it failed to include a deadly weapon finding in the judgment.[2] If a jury makes an affirmative deadly weapon finding, "the trial court shall enter the finding in the

---

[2]Appellant argues that some Texas courts of appeals have held that the State is required to file a notice of appeal to reform a judgment to include a deadly weapon finding. Because Appellant acknowledges our prior holding to the contrary and does not ask us to reconsider it, we decline to do so on our own motion. *See Mizell v. State*, 70 S.W.3d 156, 163 (Tex. App.—San Antonio 2001) (holding that the State is not required to file a notice under art. 44.01(c) unless the State is the appellant), *aff'd*, 119 S.W.3d 804 (Tex. Crim. App. 2003).

judgment." TEX. CODE CRIM. PROC. ANN. art. 42.12 § 3g(a)(2) (West 2006 & Supp. 2009); *see McCallum v. State*, 311 S.W.3d 9, 18 (Tex. App.—San Antonio 2010, no pet.) (citing *Ex parte Poe*, 751 S.W.2d 873, 875–76 (Tex. Crim. App. 1988)). We may modify a judgment to reflect a deadly weapon finding. *McCallum*, 311 S.W.3d at 18–19. In this case, the jury made an affirmative finding that Cox used a deadly weapon in commission of the crime by finding him guilty of murder, but the trial court's judgment does not reflect that finding. Accordingly, we reform the trial court's judgment to include a deadly weapon finding.

## CONCLUSION

We modify the trial court's judgment to include a deadly weapon finding and affirm the judgment as modified.

Rebecca Simmons, Justice

DO NOT PUBLISH