MARY'S OPINION HEADING 








NO. 12-09-00370-CR

 

IN
THE COURT OF APPEALS 

 

TWELFTH COURT OF
APPEALS DISTRICT

 

TYLER,
TEXAS

AARON LAMON MUSE,                             §                      APPEAL
FROM THE SEVENTH

APPELLANT

 

V.                                                                    §                      JUDICIAL
DISTRICT COURT OF

 

THE
STATE OF TEXAS,

APPELLEE                                                   §                      SMITH
COUNTY, TEXAS

                                                                                                                                                          


MEMORANDUM
OPINION

            Aaron
Lamon Muse appeals his conviction for aggravated robbery, for which he was
sentenced to imprisonment for life and fined $10,000.  In two issues, Appellant
argues that the trial court erred in denying his challenge to the composition
of the jury and that the evidence is factually insufficient to support his
conviction.  We affirm.

 

Background

            On
January 2, 2009, an African American male, armed with a silver handgun, robbed
a Family Dollar store in Lindale, Texas.  He was wearing a black ski mask, gloves,
a black or dark brown leather jacket, a dark colored hooded pullover, dark blue
jeans, and dark colored shoes.  A short distance away and approximately an hour
later, a similarly attired African American male, again armed with a silver
handgun, robbed a Super Stop gas station and convenience store in Mineola,
Texas.  During the robbery of the Super Stop store, the robber fired a shot at
a witness to the robbery.  Law enforcement immediately believed that the
robberies were committed by the same person.

Prior
to the Super Stop robbery, a Mineola police officer saw a silver pickup truck
parked in an unusual location very near the store.  He reported the license
plate to dispatch to ensure that the truck had not been reported stolen.  After
the armed robbery was reported, the officer returned to the location where the
truck had been parked.  He found that someone had driven the truck away leaving
brown marks on the grass and street, which indicated to the officer that the
truck had quickly pulled away from the scene.  Officers searched the area and
found a $100 bill, a $5 bill, two cash trays that they determined were from the
Family Dollar store, and a business card from the business adjoining the Family
Dollar store.

Using
the license plate number that the Mineola police officer had reported to
dispatch, the investigating officers identified the owner of the truck as
Rolando Gordon, Appellant’s stepfather.  Officers went to Gordon’s home early
on the morning of January 3, 2009.  They saw the truck and also saw a dark
colored jacket and a white plastic bag containing coins inside the truck. 
Gordon said he owned the truck but that Appellant and Appellant’s brother drove
it.  Appellant’s brother was in jail at the time, and the officers concluded
that Appellant was the likely suspect for the two robberies.

While
visiting with Gordon, the officers saw an African American male in the backyard
of Gordon’s residence.  They attempted to make contact with this individual,
but he ran away.  The officers chased him, but could not find him.

Believing
that Appellant committed both robberies, the officers searched the truck and
Gordon’s house.  In the truck, they found a ski mask, gloves, two black jackets,
a bank bag containing bills and coins, a white plastic bag containing coins, a
silver handgun, and a bag containing one spent cartridge and several rounds of
live ammunition.  In or near Appellant’s room, they found a ski mask, gloves,
dark blue jeans, and dark colored shoes.  The officers sent the ski mask, gloves,
and the silver handgun found in the truck to a DPS laboratory to be tested for
DNA evidence.  Appellant’s DNA matched specimens taken from all three items. 
Additional DNA from an unknown donor or donors also was found on the items.

The
officers questioned Appellant’s girlfriend, Shalandria Dawson.  According to Dawson,
on the evening of the robberies, Appellant was driving the silver pickup truck
owned by Gordon.  Dawson told the officers that Appellant was with her until
about 8:00 p.m, and that she saw him again about 9:00 p.m.  At that time, Appellant
drove the truck to Gordon’s house and began driving another vehicle, a white
Buick.  Dawson and Appellant went to eat at a restaurant and drove around
together afterward.  Early in the morning, they drove by Gordon’s house and
noticed police officers there.  Appellant dropped Dawson off at her apartment
and went to see what was happening at the house.  He then returned and told
Dawson that he had been chased by the police.

Appellant
was charged with aggravated robbery for the robbery of the Family Dollar store. 
Following the voir dire examination of prospective jurors, the State used five
of its peremptory challenges to strike African American potential jurors.  Appellant,
who is African American, made a Batson[1]
motion complaining of the State’s strikes.  After an evidentiary hearing, the
trial court denied the motion.  

            Following
the presentation of evidence, the matter was submitted to the jury. 
Ultimately, the jury found Appellant “guilty” as charged.  Punishment was
submitted to the jury.  After deliberating, the jury assessed Appellant’s
punishment at imprisonment for life and a fine of $10,000.  The trial court
sentenced Appellant accordingly, and this appeal followed.

 

Batson Motion

            In
his first issue, Appellant contends that the trial court erred in denying his Batson
motion.  Specifically, Appellant alleges that the State engaged in
purposeful discrimination when it used its peremptory challenges to excuse two
African American individuals, Jurors 1 and 19, from the venire. 

Standard
of Review and Applicable Law 

            The
Equal Protection Clause of the Fourteenth Amendment to the United States
Constitution forbids a party from challenging potential jurors on the basis of
their race.  U.S. Const. amend. XIV; Batson v.
Kentucky, 476 U.S. 79, 89, 106 S. Ct. 1712, 1719, 90 L. Ed. 2d 69
(1986).  A trial court follows a three step process to evaluate a claim that a
litigant has made a peremptory strike based on race.  Snyder v. Louisiana,
552 U.S. 472, 476, 128 S. Ct. 1203, 1207, 170 L. Ed. 2d 175 (2008).  First, a
defendant must make a prima facie showing that the state has used a peremptory
challenge to remove a potential juror on account of race.  Id.;
Purkett v. Elem, 514 U.S. 765, 767, 115 S. Ct. 1769, 1770, 131 L. Ed.
2d 834 (1995).  A defendant may establish a prima facie case solely on evidence
concerning the state’s exercise of peremptory challenges at trial.  Batson,
476 U.S. at 96, 106 S. Ct. at 1723.  He must also show that these facts and any
other relevant circumstances raise an inference that the state has excluded
potential jurors from the petit jury on account of their race.  Id.  


            Once
the defendant has made a prima facie showing, the burden shifts to the state to
come forward with a race neutral explanation for challenging the jurors.  Snyder,
552 U.S. at 476-77, 128 S. Ct. at 1207; Batson, 476 U.S. at
97-98, 106 S. Ct. 1723-24.  If the state offers race neutral reasons for the
strikes, the burden shifts again to the defendant to show that the state’s race
neutral explanations for the strikes are contrived or a pretext to conceal a racially
discriminatory intent.  Shuffield v. State, 189 S.W.3d 782, 785
(Tex. Crim. App. 2006); Jasper v. State, 61 S.W.3d 413, 421 (Tex.
Crim. App. 2001).  The credibility of the prosecutor who offers race neutral
explanations for disparate striking of jurors can be measured by “the prosecutor’s
demeanor; by how reasonable, or how improbable, the explanations are; and by
whether the proffered rationale has some basis in accepted trial strategy.”  Miller–El
v. Cockrell, 537 U.S. 322, 339, 123 S. Ct. 1029, 1040, 154 L. Ed. 2d
931 (2003).

            We
will disturb a trial court’s ruling on a Batson motion only if it
is “clearly erroneous.” Snyder, 552 U.S. at 477; 128 S. Ct. at
1207; Guzman v. State, 85 S.W.3d 242, 254 (Tex. Crim. App. 2002). 
Generally, a fact finder’s decision is clearly erroneous when it leaves an
appellate court with a “definite and firm conviction that a mistake has been
committed.”  Guzman, 85 S.W.3d at 254.  We review the evidence in
the light most favorable to the trial court’s ruling and afford great deference
to that ruling.  Jasper, 61 S.W.3d at 422.  Furthermore, a claim
that the proffered race neutral reasons for strikes are pretextual presents a
question of fact, not law, and the trial court is in the best position to
evaluate such claims.  Watkins v. State, 245 S.W.3d 444, 447
(Tex. Crim. App. 2008), cert. denied, 129 S. Ct. 92, 172 L. Ed. 2d 78
(2008); Gibson v. State, 144 S.W.3d 530, 534 (Tex. Crim. App.
2004).  The ultimate plausibility of a race neutral explanation is to be
considered in the context of whether the defendant has satisfied his burden to
show that the strike was the product of the prosecutor’s purposeful
discrimination. Watkins, 245 S.W.3d at 447.

Analysis

            At
trial, Appellant objected that the State had struck five of the seven African
American members of the prospective jury panel.  The State then responded that
it had legitimate, race neutral reasons for the strikes.  The State responded
that Juror 1 had a friend who had been investigated for or charged with
kidnapping and was not sure if the judicial system had treated the friend
fairly.  The State struck Juror 8 because her husband is a minister or pastor, and
struck Juror 28, a white female, for the same reason.  The State struck Juror
11 because her husband was unemployed,  and struck Juror 22, a white female,
for the same reason.  The State pointed out that Juror 19 had a family member investigated
for or charged with attempted murder.  Finally, the State struck Juror 31
because she knew Appellant.

After
hearing the State’s race neutral reasons, Appellant continued his Batson
challenge as to the State’s strikes of Juror 1 and Juror 19, arguing that the
State had treated a similarly situated nonminority panel member, Juror 15,
differently.  The trial court found that the State’s strikes were racially
neutral and denied Appellant’s Batson motion.

We
examine all relevant factors bearing upon the trial court’s decision.  First,
given the number of African Americans in the jury strike zone, the analysis of
the statistical data pertaining to the State’s peremptory strikes is
questionable, but not too great to attribute merely to happenstance.  Second, a
comparative juror analysis indicates that seventeen potential jurors had a
friend or family member who had been investigated or charged with a crime.  Of
those, only Jurors 1 and 19 had a friend or family member that had been
investigated or charged with a violent crime, respectively, kidnapping and
attempted murder.  Appellant argued that Juror 15 also had a family member
investigated or charged with a violent crime.  Juror 15 had a family member
charged with “child molesting,” but the State argued that such an offense is a
sexual crime, not a violent crime.  Certainly, with regard to Juror 19, attempted
murder is a violent crime that may be similar, in some respects, to aggravated
robbery.  Whether kidnapping and “child molestation” should be characterized as
violent crimes is not as obvious.  However, Juror 1 also stated that it was “questionable”
whether the judicial system worked fairly.  Thus, the State provided valid, nondiscriminatory
reasons for treating Jurors 1 and 19 differently from Juror 15.

Third,
the record shows that Appellant, and not the State, requested a jury shuffle. 
Fourth, a review of the State’s voir dire examination shows no contrasting voir
dire questions posed respectively to minority and nonminority panel members. 
Fifth, there is no evidence offered in this case to show that, historically,
the State systematically excluded African Americans from juries.  Sixth, the
reasons provided by the State for the strikes are facially race neutral when
measured by “how reasonable, or how improbable, the explanations are; and by
whether the proffered rationale has some basis in accepted trial strategy.” See
Miller–El, 537 U.S. at 339, 123 S. Ct. at 1040.  Appellant was on trial
for an aggravated robbery.  It is reasonable for the State to seek to exclude
potential jurors who have had friends or family members arrested for violent
crimes, and those where, as was the case with Juror 1, the potential juror
believes that a friend who was charged with a crime may not have been treated
fairly by the judicial system.   

            Having
reviewed the entire record, we conclude the trial court’s decision to deny
Appellant’s Batson motion was not clearly erroneous.  The State
provided racially neutral explanations for its use of peremptory challenges,
and Appellant failed to carry his burden to show that the stated reasons were
pretextual.  The trial court was in the best position to assess the
reasonableness of the State’s assertions regarding the strikes.  Such an
assessment would rely, in large part, on the trial court’s credibility
determinations.  See Miller–El, 537 U.S. at 339–40, 123 S.
Ct. at 1040–41.  Giving, as we must, deference to the trial court’s ruling, we
do not have a “definite and firm conviction that a mistake has been
committed.”  Guzman, 85 S.W.3d at 254.  We overrule Appellant’s
first issue.

 

Evidentiary Sufficiency

            In
his second issue, Appellant argues that the evidence is factually insufficient
to support the trial court’s judgment.  Specifically, Appellant contends that
the evidence is factually insufficient to support that he, rather than his
stepfather or some unknown person, committed the aggravated robbery.

Standard
of Review and Applicable Law

We
initially note that the court of criminal appeals has recently held that there
is “no meaningful distinction between the Jackson v. Virginia[2]
legal sufficiency standard and the Clewis factual sufficiency
standard and that “the Jackson v. Virginia standard is the only
standard that a reviewing court should apply in determining whether the
evidence is sufficient to support each element of a criminal offense that the
State is required to prove beyond a reasonable doubt.”  See Brooks v.
State, 323 S.W.3d 893, 895, 912  (Tex. Crim. App. 2010).  Consequently,
the court of criminal appeals overruled the factual sufficiency standard of
review as set forth in Clewis v. State, 922 S.W.2d 126, 134 (Tex.
Crim. App. 1996) and its progeny.  See id.[3]

Legal
sufficiency is the constitutional minimum required by the Due Process Clause of
the Fourteenth Amendment to sustain a criminal conviction.  See Jackson,
443 U.S. at 315–16, 99 S. Ct. at 2786–87; see also Escobedo v. State,
6 S.W.3d 1, 6 (Tex. App.–San Antonio 1999, pet. ref=d). 
The standard for reviewing a legal sufficiency challenge is whether any
rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt.  See Jackson, 443 U.S. at 320, 99 S.
Ct. at 2789; see also Johnson v. State, 871 S.W.2d 183, 186 (Tex.
Crim. App. 1993).  The evidence is examined in the light most favorable to the
verdict.  See Jackson, 443 U.S. at 320, 99 S. Ct. at 2789; Johnson,
871 S.W.2d at 186.  A successful legal sufficiency challenge will result in
rendition of an acquittal by the reviewing court.  See Tibbs v. Florida,
457 U.S. 31, 41–42, 102 S. Ct. 2211, 2217–18, 72 L. Ed. 2d 652 (1982).

In
the case at hand, to support Appellant’s conviction for aggravated robbery, the
State was required to prove that Appellant, in the course of committing theft
and with intent to obtain or maintain control of the property, intentionally or
knowingly threatened or placed another in fear of imminent bodily injury or
death and used or exhibited a deadly weapon.  Tex.
Penal Code § 29.03 (Vernon 2003).

Analysis

The
evidence at trial shows that on January 2, 2009, shortly after 8:00 p.m. in
Lindale, an African American male entered the Family Dollar store wearing a
black ski mask, dark jeans, and a dark jacket. He demanded money while wielding
a silver revolver.  He was approximately 6 feet tall, and weighed between 200
and 250 pounds.  Shortly thereafter at approximately 8:40 p.m. on the same
night, a Mineola police officer saw the truck that was later determined to be
owned by Gordon, Appellant’s stepfather. The officer took note of the truck because
it was parked at an odd location and reported the license number to dispatch to
determine whether it was stolen.  The truck was parked near the Super Stop,
where a robbery occurred approximately twenty minutes later.  Details provided
by witnesses and a review of the surveillance videos of the Super Stop robbery
matched the description, dress, methodology, and weapon of the robber at the
Family Dollar store. Given that the robberies were committed in close temporal
and spatial proximity and the description of the suspect in each was similar,
the officers believed that the robberies were committed by the same person.

The
Mineola officer recalled the truck that was parked near the Super Store around
the time of that robbery. The officers went back to that location and near
where the truck was seen parked. There they found cash, the Family Dollar
store’s cash register drawers, and a business card from the business adjoining
the Family Dollar store.  Based on this information, the officers decided to
visit Gordon’s home in Tyler to further investigate. Upon arrival, Gordon’s truck,
which had been seen earlier near the Super Stop, was parked in front of the
home. A dark colored jacket and a clear plastic bag containing coins were observed
in plain view inside the truck.  During a subsequent search of Gordon’s truck, officers
found a ski mask, gloves, two black jackets, a gun, a bank bag containing bills
and coins, another bag containing coins, and a bag containing one spent
cartridge and several live rounds of ammunition.  The robber of the Super Stop
fired one shot.  While the officers were interviewing Gordon, another man
located at the residence fled when he saw police.  He was not apprehended,
however, and the officers could not say whether that person was Appellant. 
According to his girlfriend, Appellant told her that he ran from the police in
the early morning after the robberies.  Further, Appellant’s girlfriend testified
that Appellant was driving Gordon’s truck on the evening in question.  Finally,
Appellant’s DNA evidence was determined to be on the ski mask, gloves, and gun
found in the truck.

On
the other hand, the victims and eyewitnesses to the robbery were unable to
positively identify Appellant as the robber.  Because of the attire worn by the
robber, the witnesses could only describe the robber as an African American
male, approximately six feet tall and weighing from 200 to 250 pounds.  This
broad description matched the physical characteristics of Appellant and
Appellant’s stepfather.  Additionally, another African American male was found
walking near the Super Stop convenience store shortly after the robbery. 
However, the police officers stopped this individual and found no incriminating
evidence.  Finally, Appellant alleged that his girlfriend and her neighbor used
the truck to commit the robberies while Appellant was taking a nap.  Appellant
further alleged that the police officers placed his DNA on evidence from the
robberies to frame Appellant for the crimes.

In
considering the evidence, the jury was free to disregard Appellant’s
allegations.  See Losada v. State, 721 S.W.2d 305, 309 (Tex.
Crim. App. 1986).  From
the remaining evidence, the jury reasonably could have concluded that Appellant
was the driver of the pickup truck on the evening of the two robberies, that
Appellant had worn the ski mask and gloves found in the truck, and that he had handled
the gun found in the truck.  The jury also reasonably could have concluded that
the driver of the pickup truck on the evening of the robberies was the robber.

Having
examined the evidence in the light most favorable to the verdict, we conclude
that the jury could have determined beyond a reasonable doubt that Appellant committed
the aggravated robbery at issue.  Therefore, we hold that the evidence is
sufficient under the Jackson v. Virginia standard to support the
trial court’s judgment.  Appellant=s
second issue is overruled.

 

Disposition

            Having
overruled Appellant’s first and second issues, we affirm the
trial court’s judgment.

 

                                                Brian Hoyle

                                                                                                     
  Justice     

 

 

 

Opinion
delivered May 31, 2010.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

(DO NOT PUBLISH)

 









[1] Batson v. Kentucky, 476
U.S. 79, 89, 106 S. Ct. 1712, 1719, 90 L. Ed. 2d 69 (1986).





[2] 443
U.S. 307, 315B16, 99 S. Ct. 2781, 2786B87, 61 L. Ed. 2d 560 (1979).





[3] Appellant did not have the
benefit of the court of criminal appeals’ opinion in Brooks at
the time he submitted his brief on the issue of factual sufficiency.  We
construe Appellant’s issue liberally in the interest of justice and review the
sufficiency of the evidence under the Jackson standard.  See,
e.g., White v. State, 50 S.W.3d 31, 40 (Tex. App.–Waco 2001,
pet. ref’d).